# McNEIL *v.* WISCONSIN

No. 90–5319.   Argued February 26, 1991—Decided June 13, 1991

172

*Gary M. Luck*, by appointment of the Court, 498 U. S. 979, argued the cause and filed briefs for petitioner.

*David J. Becker*, Assistant Attorney General of Wisconsin, argued the cause for respondent. With him on the brief was *James E. Doyle*, Attorney General.

*Stephen L. Nightingale* argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Solicitor General Starr, Assistant Attorney General Mueller, Deputy Solicitor General Bryson, Robert A. Long, Jr.*, and *Nina Goodman*.*

---

*Briefs of *amici curiae* urging affirmance were filed for the State of Florida et al. by *Robert A. Butterworth*, Attorney General of Florida, *Richard E. Doran*, and *Virlindia Doss*, Assistant Attorney General, and by the Attorneys General and other officials for their respective States as follows: *John K. Van de Kamp*, Attorney General of California, *John J. Kelly*, Chief State's Attorney of Connecticut, *Linley E. Pearson*, Attorney General of Indiana, *J. Joseph Curran, Jr.*, Attorney General of Maryland, *William C. Webster*, Attorney General of Missouri, *T. Travis Medlock*, Attorney General of South Carolina, *Mark W. Barnett*, Attorney General of South Dakota, *R. Paul Van Dam*, Attorney General of Utah, and *Joseph B. Meyer*, Attorney General of Wyoming; for the State of Illinois by *Neil F. Hartigan*, Attorney General, *Robert J. Ruiz*, Solicitor General, and

JUSTICE SCALIA delivered the opinion of the Court.

This case presents the question whether an accused's invocation of his Sixth Amendment right to counsel during a judicial proceeding constitutes an invocation of his *Miranda* right to counsel.

I

Petitioner Paul McNeil was arrested in Omaha, Nebraska, in May 1987, pursuant to a warrant charging him with an armed robbery in West Allis, Wisconsin, a suburb of Milwaukee. Shortly after his arrest, two Milwaukee County deputy sheriffs arrived in Omaha to retrieve him. After advising him of his *Miranda* rights, the deputies sought to question him. He refused to answer any questions, but did not request an attorney. The deputies promptly ended the interview.

Once back in Wisconsin, petitioner was brought before a Milwaukee County Court Commissioner on the armed robbery charge. The Commissioner set bail and scheduled a preliminary examination. An attorney from the Wisconsin Public Defender's Office represented petitioner at this initial appearance.

Later that evening, Detective Joseph Butts of the Milwaukee County Sheriff's Department visited petitioner in jail. Butts had been assisting the Racine County, Wisconsin, police in their investigation of a murder, attempted murder, and armed burglary in the town of Caledonia; petitioner was a suspect. Butts advised petitioner of his *Miranda* rights, and petitioner signed a form waiving them. In this

*Terrence M. Madsen,* Assistant Attorney General; and for the Appellate Committee of the California District Attorneys Association by *Jay P. Dufrechou.*

*Gregory U. Evans, Daniel B. Hales, George D. Webster, Jack E. Yelverton, Fred E. Inbau, Wayne W. Schmidt, Bernard J. Farber,* and *James P. Manak* filed a brief for Americans for Effective Law Enforcement et al. as *amici curiae.*

first interview, petitioner did not deny knowledge of the Caledonia crimes, but said that he had not been involved.

Butts returned two days later with detectives from Caledonia. He again began the encounter by advising petitioner of his *Miranda* rights and providing a waiver form. Petitioner placed his initials next to each of the warnings and signed the form. This time, petitioner admitted that he had been involved in the Caledonia crimes, which he described in detail. He also implicated two other men, Willie Pope and Lloyd Crowley. The statement was typed up by a detective and given to petitioner to review. Petitioner placed his initials next to every reference to himself and signed every page.

Butts and the Caledonia Police returned two days later, having in the meantime found and questioned Pope, who convinced them that he had not been involved in the Caledonia crimes. They again began the interview by administering the *Miranda* warnings and obtaining petitioner's signature and initials on the waiver form. Petitioner acknowledged that he had lied about Pope's involvement to minimize his own role in the Caledonia crimes and provided another statement recounting the events, which was transcribed, signed, and initialed as before.

The following day, petitioner was formally charged with the Caledonia crimes and transferred to that jurisdiction. His pretrial motion to suppress the three incriminating statements was denied. He was convicted of second-degree murder, attempted first-degree murder, and armed robbery, and sentenced to 60 years in prison.

On appeal, petitioner argued that the trial court's refusal to suppress the statements was reversible error. He contended that his courtroom appearance with an attorney for the West Allis crime constituted an invocation of the *Miranda* right to counsel, and that any subsequent waiver of that right during police-initiated questioning regarding *any* offense was invalid. Observing that the State's Supreme

Court had never addressed this issue, the Court of Appeals certified to that court the following question:

"Does an accused's request for counsel at an initial appearance on a charged offense constitute an invocation of his fifth amendment right to counsel that precludes police-initiated interrogation on unrelated, uncharged offenses?" App. 16.

The Wisconsin Supreme Court answered "no." 155 Wis. 2d 24, 454 N. W. 2d 742 (1990). We granted certiorari, 498 U. S. 937 (1990).

## II

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." In *Michigan* v. *Jackson*, 475 U. S. 625 (1986), we held that once this right to counsel has attached and has been invoked, any subsequent waiver during a police-initiated custodial interview is ineffective. It is undisputed, and we accept for purposes of the present case, that at the time petitioner provided the incriminating statements at issue, his Sixth Amendment right had attached and had been invoked with respect to the *West Allis armed robbery*, for which he had been formally charged.

The Sixth Amendment right, however, is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, "'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *United States* v. *Gouveia*, 467 U. S. 180, 188 (1984) (quoting *Kirby* v. *Illinois*, 406 U. S. 682, 689 (1972) (plurality opinion)). And just as the right is offense specific, so also its *Michigan* v. *Jackson* effect of invalidating subsequent waivers in police-initiated interviews is offense specific.

"The police have an interest . . . in investigating new or additional crimes [after an individual is formally charged

with one crime.] . . . [T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities. . . ." *Maine* v. *Moulton*, 474 U. S. 159, 179–180 (1985).

"Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses." *Id.*, at 180, n. 16.

See also *Moran* v. *Burbine*, 475 U. S. 412, 431 (1986). Because petitioner provided the statements at issue here before his Sixth Amendment right to counsel with respect to the *Caledonia offenses* had been (or even could have been) invoked, that right poses no bar to the admission of the statements in this case.

Petitioner relies, however, upon a different "right to counsel," found not in the text of the Sixth Amendment, but in this Court's jurisprudence relating to the Fifth Amendment guarantee that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." In *Miranda* v. *Arizona*, 384 U. S. 436 (1966), we established a number of prophylactic rights designed to counteract the "inherently compelling pressures" of custodial interrogation, including the right to have counsel present. *Miranda* did not hold, however, that those rights could not be waived. On the contrary, the opinion recognized that statements elicited during custodial interrogation would be admissible if the prosecution could establish that the suspect "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Id.*, at 475.

In *Edwards* v. *Arizona*, 451 U. S. 477 (1981), we established a second layer of prophylaxis for the *Miranda* right to counsel: Once a suspect asserts the right, not only must the

current interrogation cease, but he may not be approached for further interrogation "until counsel has been made available to him," 451 U. S., at 484–485—which means, we have most recently held, that counsel must be present, *Minnick* v. *Mississippi*, 498 U. S. 146 (1990). If the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards. This is "designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights," *Michigan* v. *Harvey*, 494 U. S. 344, 350 (1990). The *Edwards* rule, moreover, is *not* offense specific: Once a suspect invokes the *Miranda* right to counsel for interrogation regarding one offense, he may not be reapproached regarding *any* offense unless counsel is present. *Arizona* v. *Roberson*, 486 U. S. 675 (1988).

Having described the nature and effects of both the Sixth Amendment right to counsel and the *Miranda-Edwards* "Fifth Amendment" right to counsel, we come at last to the issue here: Petitioner seeks to prevail by combining the two of them. He contends that, although he expressly waived his *Miranda* right to counsel on every occasion he was interrogated, those waivers were the invalid product of impermissible approaches, because his prior invocation of the offense-specific Sixth Amendment right with regard to the West Allis burglary was also an invocation of the nonoffense-specific *Miranda-Edwards* right. We think that is false as a matter of fact and inadvisable (if even permissible) as a contrary-to-fact presumption of policy.

As to the former: The purpose of the Sixth Amendment counsel guarantee—and hence the purpose of invoking it—is to "protec[t] the unaided layman at critical confrontations" with his "expert adversary," the government, *after* "the ad-

verse positions of government and defendant have solidified" with respect to a particular alleged crime. *Gouveia*, 467 U. S., at 189. The purpose of the *Miranda-Edwards* guarantee, on the other hand—and hence the purpose of invoking it—is to protect a quite different interest: the suspect's "desire to deal with the police only through counsel," *Edwards*, *supra*, at 484. This is in one respect narrower than the interest protected by the Sixth Amendment guarantee (because it relates only to custodial interrogation) and in another respect broader (because it relates to interrogation regarding *any* suspected crime and attaches whether or not the "adversarial relationship" produced by a pending prosecution has yet arisen). To invoke the Sixth Amendment interest is, as a matter of *fact, not* to invoke the *Miranda-Edwards* interest. One might be quite willing to speak to the police without counsel present concerning many matters, but not the matter under prosecution. It can be said, perhaps, that it is *likely* that one who has asked for counsel's assistance in defending against a prosecution would want counsel present for all custodial interrogation, even interrogation unrelated to the charge. That is not necessarily true, since suspects often believe that they can avoid the laying of charges by demonstrating an assurance of innocence through frank and unassisted answers to questions. But even if it were true, the *likelihood* that a suspect would wish counsel to be present is not the test for applicability of *Edwards*. The rule of that case applies only when the suspect "ha[s] *expressed*" his wish for the particular sort of lawyerly assistance that is the subject of *Miranda*. *Edwards, supra,* at 484 (emphasis added). It requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police*. Requesting the assistance of an attorney at a bail hearing does not bear that construction. "[T]o find that [the defendant] invoked his Fifth Amendment right to counsel on the present charges merely by requesting

the appointment of counsel at his arraignment on the unrelated charge is to disregard the ordinary meaning of that request." *State* v. *Stewart*, 113 Wash. 2d 462, 471, 780 P. 2d 844, 849 (1989), cert. denied, 494 U. S. 1020 (1990).

Our holding in *Michigan* v. *Jackson*, 475 U. S. 625 (1986), does not, as petitioner asserts, contradict the foregoing distinction; to the contrary, it *rests* upon it. That case, it will be recalled, held that after the Sixth Amendment right to counsel attaches and is invoked, any statements obtained from the accused during subsequent police-initiated custodial questioning regarding the charge at issue (even if the accused purports to waive his rights) are inadmissible. The State in *Jackson* opposed that outcome on the ground that assertion of the Sixth Amendment right to counsel did not realistically constitute the *expression* (as *Edwards* required) of a wish to have counsel present during custodial interrogation. See 475 U. S., at 632–633. Our response to that contention was not that it *did* constitute such an expression, but that it *did not have to,* since the relevant question was not whether the *Miranda* "Fifth Amendment" right had been *asserted,* but whether the Sixth Amendment right to counsel had been *waived.* We said that since our "settled approach to questions of waiver requires us to give a broad, rather than a narrow, interpretation to a defendant's request for counsel, . . . we *presume* that the defendant requests the lawyer's services at every critical stage of the prosecution." 475 U. S., at 633 (emphasis added). The holding of *Jackson* implicitly rejects any equivalence in fact between invocation of the Sixth Amendment right to counsel and the expression necessary to trigger *Edwards.* If such invocation constituted a real (as opposed to merely a legally presumed) request for the assistance of counsel in custodial interrogation, it would have been quite unnecessary for *Jackson* to go on to establish, as it did, a new Sixth Amendment rule of no police-

initiated interrogation; we could simply have cited and relied upon *Edwards*.[1]

There remains to be considered the possibility that, even though the assertion of the Sixth Amendment right to counsel does not *in fact* imply an assertion of the *Miranda* "Fifth Amendment" right, we should declare it to be. such as a matter of sound policy. Assuming we have such an expansive power under the Constitution, it would not wisely be exercised. Petitioner's proposed rule has only insignificant advantages. If a suspect does not wish to communicate with the police except through an attorney, he can simply tell them that when they give him the *Miranda* warnings. There is not the remotest chance that he will feel "badgered" by their asking to talk to him without counsel present, since the subject will not be the charge on which he has already requested counsel's assistance (for in that event *Jackson* would preclude initiation of the interview) and he will not have rejected uncounseled interrogation on *any* subject before (for in that event *Edwards* would preclude initiation of the interview). The proposed rule would, however, seriously impede effective law enforcement. The Sixth Amendment right to

---

[1] A footnote in *Jackson*, 475 U. S., at 633–634, n. 7, quoted with approval statements by the Michigan Supreme Court to the effect that the average person does not " 'understand and appreciate the subtle distinctions between the Fifth and Sixth Amendment rights to counsel,' " that it " 'makes little sense to afford relief from further interrogation to a defendant who asks a police officer for an attorney, but permit further interrogation to a defendant who makes an identical request to a judge,' " and that " '[t]he simple fact that defendant has requested an attorney indicates that he does not believe that he is sufficiently capable of dealing with his adversaries singlehandedly.' " *Michigan* v. *Bladel*, 421 Mich. 39, 63–64, 365 N. W. 2d 56, 67 (1984). Those observations were perhaps true in the context of deciding whether a request for the assistance of counsel in defending against a particular charge implied a desire to have that counsel serve as an "intermediary" for all further interrogation on that charge. They are assuredly not true in the quite different context of deciding whether such a request implies a desire never to undergo custodial interrogation, about anything, without counsel present.

counsel attaches at the first formal proceeding against an accused, and in most States, at least with respect to serious offenses, free counsel is made available at that time and ordinarily requested. Thus, if we were to adopt petitioner's rule, most persons in pretrial custody for serious offenses would be *unapproachable* by police officers suspecting them of involvement in other crimes, *even though they have never expressed any unwillingness to be questioned.* Since the ready ability to obtain uncoerced confessions is not an evil but an unmitigated good, society would be the loser. Admissions of guilt resulting from valid *Miranda* waivers "are more than merely 'desirable'; they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law." *Moran,* 475 U. S., at 426 (citation omitted).[2]

Petitioner urges upon us the desirability of providing a "clear and unequivocal" guideline for the police: no police-initiated questioning of any person in custody who has requested counsel to assist him in defense or in interrogation. But the police do not need our assistance to establish such a

---

[2] The dissent condemns these sentiments as "revealing a preference for an inquisitorial system of justice." *Post,* at 189. We cannot imagine what this means. What makes a system adversarial rather than inquisitorial is not the presence of counsel, much less the presence of counsel where the defendant has not requested it; but rather, the presence of a judge who does not (as an inquisitor does) conduct the factual and legal investigation himself, but instead decides on the basis of facts and arguments pro and con adduced by the parties. In the inquisitorial criminal process of the civil law, the defendant ordinarily has counsel; and in the adversarial criminal process of the common law, he sometimes does not. Our system of justice is, and has always been, an inquisitorial one at the investigatory stage (even the grand jury is an inquisitorial body), and no other disposition is conceivable. Even if detectives were to bring impartial magistrates around with them to all interrogations, there would be no decision for the impartial magistrate to umpire. If all the dissent means by a "preference for an inquisitorial system" is a preference not to require the presence of counsel during an investigatory interview where the interviewee has not requested it—that is a strange way to put it, but we are guilty.

182

guideline; they are free, if they wish, to adopt it on their own. Of course it *is* our task to establish guidelines for judicial review.   We like *them* to be "clear and unequivocal," see, *e. g.*, *Roberson*, 486 U. S., at 681–682, but only when they guide sensibly and in a direction we are authorized to go.   Petitioner's proposal would in our view do much more harm than good, and is not contained within, or even in furtherance of, the Sixth Amendment's right to counsel or the Fifth Amendment's right against compelled self-incrimination.[3]

\*   \*   \*

"This Court is forever adding new stories to the temples of constitutional law, and the temples have a way of collapsing when one story too many is added."   *Douglas* v. *Jeannette*, 319 U. S. 157, 181 (1943) (opinion of Jackson, J.).   We decline to add yet another story to *Miranda*.   The judgment of the Wisconsin Supreme Court is

*Affirmed.*

---

[3] The dissent predicts that the result in this case will routinely be circumvented when, "[i]n future preliminary hearings, competent counsel . . . make sure that they, or their clients, make a statement on the record" invoking the *Miranda* right to counsel.   *Post*, at 184.   We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than "custodial interrogation"—which a preliminary hearing will not always, or even usually, involve, cf. *Pennsylvania* v. *Muniz*, 496 U. S. 582, 601–602 (1990) (plurality opinion); *Rhode Island* v. *Innis*, 446 U. S. 291, 298–303 (1980).   If the *Miranda* right to counsel can be invoked at a preliminary hearing, it could be argued, there is no logical reason why it could not be invoked by a letter prior to arrest, or indeed even prior to identification as a suspect.   Most rights must be asserted when the government seeks to take the action they protect against.   The fact that we have allowed the *Miranda* right to counsel, once asserted, to be effective with respect to future custodial interrogation does not necessarily mean that we will allow it to be asserted initially outside the context of custodial interrogation, with similar future effect.   Assuming, however, that an assertion at arraignment would be effective, and would be routinely made, the mere fact that adherence to the principle of our decisions will not have substantial consequences is no reason to abandon that principle.   It would remain intolerable that a person in custody who had expressed *no* objection to being questioned would be unapproachable.

JUSTICE KENNEDY, concurring.

I join the opinion of the Court in all respects. Its sensible recognition that invocation of the Sixth Amendment right to counsel is specific to the offense in question should apply as well to requests for counsel under the Fifth Amendment. See *Arizona* v. *Roberson*, 486 U. S. 675, 688 (1988) (KENNEDY, J., dissenting). For those in custody, *Edwards* v. *Arizona*, 451 U. S. 477 (1981), and its progeny go far to protect an individual who desires the assistance of counsel during interrogation. Limiting the extraordinary protections of *Edwards* to a particular investigation would not increase the risk of confessions induced by official efforts to wear down the will of a suspect. Having adopted an offense-specific rule for invocation of the Sixth Amendment right to counsel, the Court should devote some attention to bringing its Fifth and Sixth Amendment jurisprudence into a logical alignment, and should give uniform, fair, and workable guidelines for the criminal justice system.

Even if petitioner had invoked his Fifth Amendment right with respect to the West Allis armed robbery, I do not believe the authorities should have been prohibited from questioning him in connection with the Caledonia offenses.

JUSTICE STEVENS, with whom JUSTICE MARSHALL and JUSTICE BLACKMUN join, dissenting.

The Court's opinion demeans the importance of the right to counsel. As a practical matter, the opinion probably will have only a slight impact on current custodial interrogation procedures. As a theoretical matter, the Court's innovative development of an "offense-specific" limitation on the scope of the attorney-client relationship can only generate confusion in the law and undermine the protections that undergird our adversarial system of justice. As a symbolic matter, today's decision is ominous because it reflects a preference for an inquisitorial system that regards the defense lawyer as an impediment rather than a servant to the cause of justice.

## I

The predicate for the Court's entire analysis is the failure of the defendant at the preliminary hearing to make a "statement that can reasonably be construed to be expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police.*" *Ante*, at 178. If petitioner in this case had made such a statement indicating that he was invoking his Fifth Amendment right to counsel as well as his Sixth Amendment right to counsel, the entire offense-specific house of cards that the Court has erected today would collapse, pursuant to our holding in *Arizona* v. *Roberson*, 486 U. S. 675 (1988), that a defendant who invokes the right to counsel for interrogation on one offense may not be reapproached regarding any offense unless counsel is present.

In future preliminary hearings, competent counsel can be expected to make sure that they, or their clients, make a statement on the record that will obviate the consequences of today's holding. That is why I think this decision will have little, if any, practical effect on police practices.

## II

The outcome of this case is determined by the Court's parsimonious "offense-specific" description of the right to counsel guaranteed by the Sixth Amendment. The Court's definition is inconsistent with the high value our prior cases have placed on this right, with the ordinary understanding of the scope of the right, and with the accepted practice of the legal profession.

In *Michigan* v. *Jackson*, 475 U. S. 625 (1986), we held that the defendant's invocation of his right to the assistance of counsel at arraignment prohibited the police from initiating a postarraignment custodial interrogation without notice to his lawyer. After explaining that our prior cases required us "to give a broad, rather than a narrow, interpretation to a defendant's request for counsel," we squarely rejected "the

State's suggestion that respondents' requests for the appointment of counsel should be construed to apply only to representation in formal legal proceedings." *Id.*, at 633. Instead, we noted that "it is the State that has the burden of establishing a valid waiver [of the right to counsel]. Doubts must be resolved in favor of protecting the constitutional claim." *Ibid.* (citation omitted).

Today, however, the Court accepts a narrow, rather than a broad, interpretation of the same right. It accepts the State's suggestion that although, under our prior holding in *Michigan* v. *Jackson*, a request for the assistance of counsel at a formal proceeding such as an arraignment constitutes an invocation of the right to counsel at police-initiated custodial interrogation as well, such a request only covers interrogation about the specific charge that has already been filed and for which the formal proceeding was held. Today's approach of construing ambiguous requests for counsel narrowly and presuming a waiver of rights is the opposite of that taken in *Jackson.*

The Court's holding today moreover rejects the common-sense evaluation of the nature of an accused's request for counsel that we expressly endorsed in *Jackson:*

> "We also agree with the comments of the Michigan Supreme Court about the nature of an accused's request for counsel:
>
> "'Although judges and lawyers may understand and appreciate the subtle distinctions between the Fifth and Sixth Amendment rights to counsel, the average person does not. When an accused requests an attorney, either before a police officer or a magistrate, he does not know which constitutional right he is invoking; he therefore should not be expected to articulate exactly why or for what purposes he is seeking counsel. It makes little sense to afford relief from further interrogation to a defendant who asks a police officer for an attorney, but permit further interrogation to a defendant who makes

an identical request to a judge. The simple fact that defendant has requested an attorney indicates that he does not believe that he is sufficiently capable of dealing with his adversaries singlehandedly.' 421 Mich., at 63–64, 365 N. W. 2d, at 67." *Id.*, at 633–634, n. 7.

The Court explains away this commonsense understanding by stating that although "[t]hose observations were perhaps true in the context of deciding whether a request for the assistance of counsel in defending against a particular charge implied a desire to have that counsel serve as an 'intermediary' for all further interrogation on that charge[, t]hey are assuredly not true in the quite different context of deciding whether such a request implies a desire never to undergo custodial interrogation, about anything, without counsel present." *Ante*, at 180, n. 1. Even assuming that this explanation by the Court could be supported if the custodial interrogation related to an offense that was entirely separate from the charge for which a suspect had invoked his Sixth Amendment right to counsel, it cannot explain away the commonsense reality that petitioner in this case could not have known that his invocation of his Sixth Amendment right to counsel was restricted to the Milwaukee County offense, given that investigations of the Milwaukee County offense and the Caledonia offense were concurrent and conducted by overlapping personnel.[1]

---

[1] After McNeil was first apprehended in Omaha pursuant to the Milwaukee County arrest warrant, Deputy Sheriff Smukowski of Milwaukee County and a colleague from the same department,traveled to Omaha for purposes of transporting McNeil back to Wisconsin. Smukowski testified at trial that prior to going to Omaha he had been aware that McNeil was a suspect in the Caledonia murder as well as in the Milwaukee County armed robbery. Tr. 4–5 (Nov. 9, 1987). He further testified that on May 21, 1987, he and his colleague talked to McNeil during the transport back to Wisconsin "about the murder case and the armed robbery," *id.*, at 7, and that they were operating under the understanding that they would take "a statement as to either case" if McNeil would provide one, *id.*, at 9. Smukowski testified that they urged petitioner to "tell his side of the

Finally, the Court's "offense-specific" characterization of the constitutional right to counsel ignores the substance of the attorney-client relationship that the legal profession has developed over the years. The scope of the relationship between an individual accused of crime and his attorney is as broad as the subject matter that might reasonably be encompassed by negotiations for a plea bargain or the contents of a presentence investigation report. Any notion that a constitutional right to counsel is, or should be, narrowly defined by the elements of a pending charge is both unrealistic and invidious. Particularly given the implication that McNeil would be given favorable treatment if he told "his side of the story" as to either or both crimes to the Milwaukee County officers, I find the Court's restricted construal of McNeil's relationship with his appointed attorney at the arraignment on the armed robbery charges to be unsupported.

In any case, the offense-specific limitation on the Sixth Amendment right to counsel can only generate confusion in the law. The parties and the Court have assumed in this case, for the purposes of analyzing the legal issues, that the custodial interrogation of McNeil involved an offense (murder) that was completely unrelated to the pending charge of armed robbery. The Court therefore does not flesh out the precise boundaries of its newly created "offense-specific" limitation on a venerable constitutional right. I trust its boundaries will not be patterned after the Court's double jeopardy jurisprudence, cf. *Blockburger* v. *United States*, 284 U. S. 299 (1932), and I can only wonder how much leeway it will accord the police to file charges selectively in order to preserve opportunities for custodial interrogation, particularly if the Court is so unquestioningly willing to treat the offenses in this case as separate even though the investigations were

---

story" in order that his cooperation might help him later, *id.*, at 8, and that prior to leaving Omaha with petitioner, Smukowski and his colleague used petitioner's help in trying to locate Crowley, another suspect in the Caledonia murder, in Omaha, *id.*, at 13.

concurrent and conducted by overlapping personnel. Whatever the future may portend, the Court's new rule can only dim the "bright-line" quality of prior cases such as *Edwards v. Arizona*, 451 U. S. 477 (1981), *Solem v. Stumes*, 465 U. S. 638 (1984), and *Michigan v. Jackson*, 475 U. S. 625 (1986).

## III

In the final analysis, the Court's decision is explained by its fear that making counsel available to persons held in custody would "seriously impede effective law enforcement." *Ante*, at 180. The magnitude of the Court's alarm is illuminated by its use of italics:

> "Thus, if we were to adopt petitioner's rule, most persons in pretrial custody for serious offenses would be *unapproachable* by police officers suspecting them of involvement in other crimes, *even though they have never expressed any unwillingness to be questioned*." *Ante*, at 181.

Of course, the Court is quite wrong and its fears are grossly exaggerated. The fears are exaggerated because, as I have explained, today's holding will probably affect very few cases in the future. The fears are misguided because a contrary rule would not make all pretrial detainees "unapproachable"; it would merely serve to ensure that a suspect's statements during custodial interrogation are truly voluntary.

A contrary rule would also comport with respect to tradition. Undergirding our entire line of cases requiring the police to follow fair procedures when they interrogate presumptively innocent citizens suspected of criminal wrongdoing is the longstanding recognition that an adversarial system of justice can function effectively only when the adversaries communicate with one another through counsel and when laypersons are protected from overreaching by more experienced and skilled professionals. Whenever the Court ignores the importance of fair procedure in this context and describes the societal interest in obtaining "uncoerced confes-

sions" from pretrial detainees as an "unmitigated good," the Court is revealing a preference for an inquisitorial system of justice. As I suggested in *Moran* v. *Burbine*, 475 U. S. 412 (1986):

> "This case turns on a proper appraisal of the role of the lawyer in our society. If a lawyer is seen as a nettlesome obstacle to the pursuit of wrongdoers—as in an inquisitorial society—then the Court's decision today makes a good deal of sense. If a lawyer is seen as an aid to the understanding and protection of constitutional rights—as in an accusatorial society—then today's decision makes no sense at all." *Id.*, at 468 (STEVENS, J., dissenting).

The Court's refusal to acknowledge any "danger of 'subtle compulsion'"[2] in a case of this kind evidences an inability to recognize the difference between an inquisitorial and an adversarial system of justice. Accordingly, I respectfully dissent.

---

[2] In his opinion dissenting for himself and two other members of the Wisconsin Supreme Court, Chief Justice Heffernan wrote:

"It is apparent that there is danger of 'subtle compulsion' when a defendant requests the assistance of an attorney at an initial appearance and is nevertheless subjected to further interrogation while custody continues. Whether a request for an attorney is made to a police officer or to a judge, whether in the jail or during an initial appearance, the dangers of the inherent pressure of custodial interrogation when not having an attorney present are the same. Just as the *Edwards* [v. *Arizona*, 451 U. S. 477 (1981),] protection is not dependent upon the subject matter of the interrogation, neither is this protection dependent upon whether the request for assistance of counsel is made to a police officer while in custody or to a magistrate at an initial appearance before the defendant is interrogated." 155 Wis. 2d 24, 50, 454 N. W. 2d 742, 752–753 (1990).

See also *United States ex rel. Espinoza* v. *Fairman*, 813 F. 2d 117 (CA7 1987).