977 F.2d 593
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gregory Keith LANDSBERG, Defendant-Appellant.
 No. 91-50814.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 20, 1992.*
Decided Sept. 28, 1992.
 
 1
 Before TANG and CYNTHIA HOLCOMB HALL, Circuit Judges, and SHUBB,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Gregory Keith Landsberg appeals his conviction on one count possession and one count uttering of counterfeit currency in violation of 18 U.S.C. § 472 on the ground that statements he made to investigating officers subsequent to his arrest should have been suppressed from the evidence presented at trial. The issue presented on appeal is whether the district court properly concluded that appellant waived his Miranda-Edwards rights.
 
 I. Factual Background
 
 4
 In the afternoon of April 11, 1991, the police arrested Landsberg on suspicion of passing sixteen counterfeit bills that day in a baseball card shop in Reseda, California. Shortly after his arrest, Landsberg invoked his right to counsel. He was subsequently transported by automobile to the Secret Service Office across town for booking.
 
 
 5
 During their drive to the Secret Service Office, Landsberg attempted to speak to the transporting officer, Secret Service Agent ("SA") Maples. SA Maples informed him that he did not want to discuss the circumstances of the offense with him. Landsberg asked SA Maples some questions, to which SA Maples responded. As they pulled into the parking area of the Secret Service Office, Landsberg stated "I want to tell you what really happened." SA Maples told him that he did not want to talk about what happened until they reached the office. At that point, SA Maples would read Landsberg his Miranda rights again and he could waive them if he wanted to.
 
 
 6
 In an interview room at the Secret Service Office, SA Maples re-read Landsberg his Miranda rights and Landsberg indicated he understood those rights and wanted to waive them. Landsberg proceeded to make a number of self-incriminating statements which were later admitted at trial. He also wrote a statement detailing some aspects of his criminal activities and signed the statement under oath.
 
 
 7
 SA Maples asked if Landsberg would help track down two other suspects. Landsberg asked if he would be released that day. SA Maples explained to him that he did not have to cooperate, but if he did cooperate concerning other individuals, SA Maples would do what he could to try to get him released. However, SA Maples clearly explained that he could not promise anything. Landsberg asked about the penalties he was facing, and SA Maples informed him that the maximum was twenty years. Ultimately, Landsberg decided not to cooperate concerning the other suspects.
 
 II. Discussion
 A. Standard of Review
 
 8
 "This court reviews de novo the question whether a custodial statement must be suppressed on Fifth Amendment grounds." Desire v. Attorney General of California, No. 91-55334, slip op. at 8374 (9th Cir. July 10, 1992). The voluntariness of a defendant's confession and waiver is reviewed de novo. See United States v. Wolf, 813 F.2d 970, 974 n. 16 (9th Cir.1987). Underlying factual findings are upheld unless clearly erroneous. Id.
 
 B. Analysis
 
 9
 "[A]n accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further conversations with the police." Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). This rule is "designed to prevent police from badgering a defendant into waiving his previously asserted Miranda rights." McNeil v. Wisconsin, --- U.S. ----, 111 S.Ct. 2204, 2208 (1991) (quoting Michigan v. Harvey, 494 U.S. 344, 350 (1990)). "[I]f the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." Smith v. Illinois, 469 U.S. 91, 95 (1984).
 
 
 10
 "[I]nquiries or statements by either an accused or a police officer, relating to routine incidents of the custodial relationship, will not generally 'initiate' a conversation in the sense in which that word was used in Edwards." Oregon v. Bradshaw, 462 U.S. 1039, 1045 (1983) (plurality opinion). A conversation is initiated for purposes of Edwards when an accused "evince[s] a willingness and a desire for a generalized discussion about the investigation; it was not merely a necessary inquiry arising out of the incidents of the custodial relationship." Id. at 1045-46.
 
 
 11
 Following an evidentiary hearing to determine the admissibility of the statements, the district court found:
 
 
 12
 After defendant later invoked his right to counsel, he was not interrogated or coerced by Special Agent Maples. Defendant's subsequent statements to Special Agent Maples were initiated by defendant and made pursuant to knowing voluntary waiver of his Miranda rights.
 
 
 13
 That finding is supported by the evidence. The district court's finding that Landsberg knowingly and voluntarily waived his Miranda rights is also supported by the evidence.
 
 
 14
 Landsberg argues from his underlying testimony at the evidentiary hearing that during the car ride but prior to his statement "I want to tell you what really happened," SA Maples promised favorable treatment in exchange for cooperation, commented on the investigation and the penalty appellant faced, discouraged Landsberg from consulting with a lawyer, and asked him a question about a suspected accomplice in the counterfeiting scheme. If true, such conduct would raise substantial questions whether SA Maples interrogated appellant in violation of Edwards and whether appellant's subsequent waiver of his Fifth Amendment rights was voluntary. See Collazo v. Estelle, 940 F.2d 411, 418 (9th Cir.1991) (en banc), cert. denied, 112 S.Ct. 870 (1992).
 
 
 15
 However, the district court did not incorporate Landsberg's version of events into its very detailed findings. SA Maples' declaration and oral testimony contradicted Landsberg's testimony. The court stated at the conclusion of the hearing that it was denying Landsberg's motion in part on credibility grounds. Based on the findings and the court's remarks at the close of the evidentiary hearing, it is clear that the court accepted the testimony of SA Maples and rejected Landsberg's testimony. See United States v. Gomez, 846 F.2d 557, 560 (9th Cir.1988). This credibility determination is supported by the record and not clearly erroneous.
 
 
 16
 Landsberg also contends that SA Maples' response to a question posed by him during the car ride constituted an impermissible legal opinion. Although the district court made no finding as to this purported discussion, there was no factual dispute at the hearing as to what was said. SA Maples testified:
 
 
 17
 On the way back to the field office the defendant gave me a hypothetical situation. He asked me what would happen--this is only hypothetical--what would happen if someone passed counterfeit money and didn't know it was counterfeit, and my response was nothing. You have nothing to worry about if you don't know that it was counterfeit.
 
 
 18
 Landsberg's purported hypothetical "initiated" conversation within the meaning of Edwards. See Bradshaw, 462 U.S. at 1045-46. It was Landsberg's question rather than SA Maples' answer that provided the impetus for further dialogue about the particulars of the case. Further, SA Maples' response to Landsberg's hypothetical does not approach the kind of "onesided, unauthorized legal opinion" which this court recently found demeaning to the pretrial process. See Collazo, 940 F.2d at 418 (improper to dispense legal opinion regarding whether suspect should remain silent and exercise his right to counsel).[1]
 
 
 19
 Lastly, Landsberg contends his subsequent written confession at the Secret Service Office was involuntary. According to Landsberg's testimony, he began to write that he did not know the money was counterfeit, but changed it when SA Maples indicated it was necessary that he write that he in fact knew the money was counterfeit in order to fully cooperate and in turn be granted favorable treatment. SA Maples testified that appellant began to write "I did know the money was counterfeit," but after writing "did" he decided that would incriminate him too much so he wrote "pretty sure" in its place. The district court found that both SA Maples and his supervisor "clearly explained that [they] could not promise anything ..." That finding is not clearly erroneous. In light of that finding, Landsberg's written confession was not involuntary even if Landsberg's version of events surrounding the written confession were accepted as true.
 
 III. Conclusion
 
 20
 The district court's findings in this case are not clearly erroneous and support the conclusion that Landsberg initiated the conversation and that he knowingly, intelligently, and voluntarily waived his Miranda-Edwards rights.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Honorable William B. Shubb, United States District Judge for the Eastern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Landsberg also argues that he relied upon SA Maples' response and that such reliance suggests that he did not fully comprehend both the nature of the right being abandoned and the consequences of the decision to abandon it. Based on the totality of the circumstances, the district court properly concluded that the subsequent waiver was knowing and intelligent. See Moran v. Burbine, 475 U.S. 412, 421 (1986). Landsberg not only understood the significance of the Miranda warnings but had prior to being transported invoked the right to counsel. See United States v. Velasquez, 885 F.2d 1076, 1087 (3rd Cir.1989), cert. denied, 494 U.S. 1017 (1990). Moreover, appellant does not argue that the officer misinformed appellant about the law in response to the question. Id. at 1086-87