930 So.2d 700 (2006)
Raymond PARDON, a/k/a Peter Pardon, Appellant,
v.
STATE of Florida, Appellee.
No. 4D04-4231.
District Court of Appeal of Florida, Fourth District.
April 26, 2006.
Rehearing Denied June 29, 2006.
James S. Lewis and Melissa Minsk Donoho, Fort Lauderdale, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Monique E. L'Italien, Assistant Attorney General, West Palm Beach, for appellee.
*701 WARNER, J.
Raymond Pardon, also known as Peter Pardon, appeals his convictions of attempted robbery, aggravated battery on a person older than sixty-five, and aggravated assault with a deadly weapon. He contends that the court failed to suppress his statements made in violation of his Miranda[1] rights due to a detective's failure to honor his request for an attorney and that prosecutorial misconduct constituted fundamental error. We conclude that the court did not err in either regard and affirm.
Pardon was seeing Michelle Madden, an admitted prostitute, while he was separated from his wife. According to Madden, the two were using drugs for days and had no money for any more drugs. While driving around, they spotted an elderly couple at a bus stop. Madden said that Pardon told her to get out of the car and get the elderly woman's purse. Madden had a knife in her hand when she got out of the car. She grabbed the purse, and the woman and her husband started fighting her. She tried to slash both the husband and the wife with her knife when another woman yelled at her, making her come back to reality. She said that Pardon then backed the car up, opened the passenger door, and helped her get back in. He started to accelerate while holding the door open. They then left the scene.
Pardon was eventually arrested, and Detective Moore was assigned as the lead detective in the case. He conducted an interview of Pardon. Moore required Pardon to read the Miranda rights out loud. As Pardon read about his right to an attorney, the following exchange took place:
Pardon (reading): And in regards to this investigation, have you previously asked a police officer to allow you to speak to an attorney? Yeah. I did that. No, I'm going to put no.
Moore immediately asked Pardon to explain what he meant. Pardon related that when he was downstairs he briefly asked one of the officers if he could talk to his attorney. Moore asked if he still wanted to talk to an attorney or if he wanted to talk to Moore, and Pardon said he wanted to talk to Moore.
After asking Pardon to sign the waiver of Miranda rights, Moore again asked about his previous request for an attorney. Pardon said he had asked one of the officers who "rode me over here" about whether he would get to see his attorney. Pardon stated, "And he said to me, you'll have to worry about that later. At this point, I guess he didn't, you know feel that I need an attorney because there was no questioning going on . . . ." Again, Moore asked if Pardon really wanted to talk with him and whether he understood his rights. Pardon stated that he did want to talk to Moore and proceeded to make a statement.
Pardon moved to suppress the statement, claiming that when he informed Moore that he had previously requested counsel, he effectively invoked his right to counsel under the Fifth Amendment and under article I, section 9, of the Florida Constitution. The state could not show a valid waiver of that right by showing only that Pardon was responding to further police-initiated custodial interrogation. See Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). There, the Supreme Court explained:
[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further *702 police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.
Id. at 484-85, 101 S.Ct. 1880 (footnote omitted).
Although Miranda safeguards require the police to unequivocally honor an arrestee's request not to speak to the police without counsel, the warnings are not required unless a defendant is subject to "custodial interrogation." Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); Traylor v. State, 596 So.2d 957 (Fla.1992). The Supreme Court in Innis, 446 U.S. at 300, 100 S.Ct. 1682, stated, "`Interrogation,' as conceptualized in the Miranda opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." The Supreme Court found that in Innis, even though the defendant was in custody while being transported to the police station, he was not interrogated where the patrolmen transporting him were talking to each other and he voluntarily provided them with incriminating information.
Similarly, Pardon was merely in custody while being transported to the police station when he asked for counsel. He was not being interrogated, as was clear from his own comments to Detective Moore. No evidence was presented to support a finding that there was either express questioning or the functional equivalent.
The state maintains that the Miranda right to counsel cannot be anticipatorily invoked when custodial interrogation is not imminent, as held in Sapp v. State, 690 So.2d 581 (Fla.1997). We agree. Relying on a footnote in McNeil v. Wisconsin, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), the Sapp court determined that an individual is not entitled to "invoke the Miranda right to counsel before custodial interrogation has begun or is imminent." Id. at 585. In Sapp, the defendant who was in custody on a different crime, invoked his right to counsel, and then was questioned by police days later on another matter after being Mirandized again but without re-asserting his right to counsel. The court held that Sapp's invocation of his right to counsel in the first case did not invoke his Fifth Amendment right under the United States Constitution or his right under article I, section 9 of the Florida Constitution for the second case, because interrogation in the second case was not imminent when the right was invoked.
Further explaining Sapp, the court in Ault v. State, 866 So.2d 674, 682 (Fla.2003), said:
[I]t is clear from the analysis in Sapp that this Court was not concerned with the time between the invocation of rights and the questioning on the unrelated charge. Rather, it is custodial interrogation that triggers the Miranda prophylactic. As this Court explained in Sapp, "requiring the invocation [of the right to counsel] to occur either during custodial interrogation or when it is imminent strikes a healthier balance between the protection of the individual from police coercion on the one hand and the State's need to conduct criminal investigations on the other." 690 So.2d at 586. As we stated in Traylor v. State, 596 So.2d 957, 965 (Fla.1992), "We adhere to the principle that the state's authority to obtain freely given confessions is not an evil, but an unqualified *703 good." Accord Hess v. State, 794 So.2d 1249, 1259-61 (Fla.2001).
In McNeil, on which Sapp relied, the Supreme Court determined that an accused's invocation of his Sixth Amendment right to counsel during judicial proceedings did not constitute invocation of the Fifth Amendment right to counsel. Explaining the difference between the two rights, the court said:
The purpose of the Sixth Amendment counsel guarantee-and hence the purpose of invoking it-is to "protec[t] the unaided layman at critical confrontations" with his "expert adversary," the government, after "the adverse positions of government and defendant have solidified" with respect to a particular alleged crime. [U.S. v.] Gouveia, 467 U.S. [180] at 189, 104 S.Ct. [2292] at 2298 [81 L.Ed.2d 146 (1984)]. The purpose of the Miranda-Edwards guarantee, on the other hand-and hence the purpose of invoking it-is to protect a quite different interest: the suspect's "desire to deal with the police only through counsel," Edwards, supra, 451 U.S., at 484, 101 S.Ct., at 1884. This is in one respect narrower than the interest protected by the Sixth Amendment guarantee (because it relates only to custodial interrogation) and in another respect broader (because it relates to interrogation regarding any suspected crime and attaches whether or not the "adversarial relationship" produced by a pending prosecution has yet arisen).
McNeil, 501 U.S. at 177-78, 111 S.Ct. 2204. In a footnote, the Supreme Court stated:
We have in fact never held that a person can invoke his Miranda rights anticipatorily, in a context other than "custodial interrogation"which a preliminary hearing will not always, or even usually, involve, cf. Pennsylvania v. Muniz, 496 U.S. 582, 601-602, 110 S.Ct. 2638, 2650-2651, 110 L.Ed.2d 528 (1990) (plurality opinion); Rhode Island v. Innis, 446 U.S. 291, 298-303, 100 S.Ct. 1682, 1688-1691, 64 L.Ed.2d 297 (1980). If the Miranda right to counsel can be invoked at a preliminary hearing, it could be argued, there is no logical reason why it could not be invoked by a letter prior to arrest, or indeed even prior to identification as a suspect. Most rights must be asserted when the government seeks to take the action they protect against. The fact that we have allowed the Miranda right to counsel, once asserted, to be effective with respect to future custodial interrogation does not necessarily mean that we will allow it to be asserted initially outside the context of custodial interrogation, with similar future effect. Assuming, however, that an assertion at arraignment would be effective, and would be routinely made, the mere fact that adherence to the principle of our decisions will not have substantial consequences is no reason to abandon that principle. It would remain intolerable that a person in custody who had expressed no objection to being questioned would be unapproachable.
Id. at 182 n. 3, 111 S.Ct. 2204; see also U.S. v. LaGrone, 43 F.3d 332, 340 (7th Cir.1994) ("We believe that not allowing a defendant to invoke his Miranda rights anticipatorily does not place an arduous burden on the defendantall he needs to do is invoke his right in response to or just before interrogation.").
Here, the interrogation of Pardon was not imminent. He was merely being booked into detention, albeit on the same charge on which he was later questioned. Questioning did not occur until a few hours later. Any request for an attorney at this point was an anticipatory invocation of his Miranda rights which would not prevent the officers from later reading him his *704 rights preparatory to interrogation. He could have easily asserted his right to an attorney when Moore asked him about it, but he did not. No constitutional violation is present.
With respect to his trial, Pardon contends that the statements in the prosecutor's closing argument were so egregious as to constitute fundamental error. We have reviewed the argument and do not conclude that the unobjected-to comments rose to the level of fundamental error. For the most part, the statements were supported by the evidence at trial. But, individually or collectively, we do not find that they are so egregious as to warrant a new trial.
Affirmed.
KLEIN and HAZOURI, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).