[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 13-14521
Non-Argument Calendar

————————————————

D.C. Docket No. 0:13-cv-61317-WPD

RAYMOND PARDON, a.k.a. Peter Pardon,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(April 10, 2015)

Before MARCUS, WILLIAM PRYOR, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Petitioner Raymond Pardon, a Florida state prisoner, appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition.  We agree with the district court that habeas relief is not warranted, and thus affirm.

## I. BACKGROUND

The crime underlying this habeas petition occurred in September, 2003. Petitioner was living with his girlfriend Michelle Madden, and the two had been using drugs for days when they ran out of money.  *See Pardon v. State*, 930 So. 2d 700, 701 (Fla. 4th DCA 2006).  While driving around, Petitioner and Madden spotted an elderly couple at a bus stop.  *Id.*  Madden testified that Petitioner stopped and covered his car tag, then pulled up close to the couple and told her to get out and grab the woman's purse.  *Id.*  Madden got out of the car, carrying a knife that belonged to Petitioner.  *Id.*  She tried but was unable to grab the purse, and she slashed at both the woman and her husband as they fought to maintain possession of it.  *Id.*  At some point, Petitioner backed the car up, helped Madden get back in, and fled the scene.  *Pardon*, 930 So. 2d at 701.

Petitioner was arrested on September 19, 2003. When he was first detained, Petitioner asked one of the officers who picked him up if he could talk to an attorney.  The officer responded that Petitioner would have to "worry about that later."  Petitioner acknowledges that the officer did not interrogate him, and that "there was no questioning going on" when he asked about an attorney.

2

About three hours after he was detained, Petitioner was interviewed by Detective Lance Moore.  At the beginning of the interview, Moore required Petitioner to read a statement of his *Miranda* rights out loud.  While reading, Petitioner made it clear that he understood he had a right to have an attorney present during the interview.  Petitioner told Moore that he had previously asked about an attorney but disavowed any desire to speak to an attorney at that time, stating:

> Petitioner:  [Reading rights card] And in regards to this investigation, have you previously asked a police officer to allow you to speak to any attorney?  Yeah, I did that.  No, I'm going to put no.
>
> Moore:  Well, I mean, tell me.  I mean, I don't know.
>
> Petitioner:  Well, downstairs I just briefly said to one of the fellows, you know, you know can I talk to my attorney.  And—
>
> Moore:  Okay.  Well, let me ask you:  Did you talk to me?
>
> Petitioner:  No
>
> Moore:  Okay.  Well, let me ask you:  Did—do you want to talk to an attorney or do you want to talk to me?  It's your decision.
>
> Petitioner:  I want to talk to you.
>
> Moore:  Are you sure?
>
> Petitioner:  Yes.

Moore asked several more questions to ensure that Petitioner knew and understood his rights, and that he did not want to contact an attorney.  Petitioner

3

confirmed his decision to speak to Moore without an attorney. Moore then completed the interview, during which Petitioner made incriminating statements about his participation in the crime. The interview was recorded.

Petitioner subsequently was charged with one count of attempted robbery, two counts of aggravated battery on a person sixty-five years or older, and one count of aggravated assault. Prior to trial, Petitioner moved to suppress his interview with Moore. Petitioner argued that he had asked to speak with an attorney and that Moore had interviewed him without honoring his request, in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966) and its progeny. There is no written order in the record ruling on the motion to suppress, but the trial judge allowed the recording of Petitioner's interview to be played for the jury. The jury convicted Petitioner on all four counts as charged. After applying a habitual violent felony enhancement, the trial judge sentenced Petitioner to life imprisonment.

Petitioner's conviction and sentence were affirmed on direct appeal. *Pardon*, 930 So. 2d at 704. Addressing Petitioner's *Miranda* claim, the Florida appellate court held that Petitioner's rights were not violated because he was not undergoing interrogation, and interrogation was not imminent, when he asked if he could talk to an attorney. *Id.* at 703. Petitioner sought state post-conviction relief under Florida Rule of Criminal Procedure 3.850, which was denied. *See Pardon v.*

4

*State*, 88 So. 3d 955 (Fla. 4th DCA 2011).  Petitioner then filed the instant federal habeas petition under § 2254 asserting numerous grounds for relief.  The district court denied relief on all grounds.  This Court granted a certificate of appealability on the *Miranda* issue.

## II. DISCUSSION

### A.    Applicable Standard

We review *de novo* the district court's legal conclusions, and we review the district court's findings of fact for clear error.  *Terrell v. GDCP Warden*, 744 F.3d 1255, 1261 (11th Cir. 2014).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a highly deferential standard for reviewing the Florida court's decision on the merits of Petitioner's *Miranda* claim.  *See id.*  The AEDPA only authorizes federal habeas relief if the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or if it was "based on an unreasonable determination of the facts in light of the evidence presented."  *Id.* (quoting 28 U.S.C. § 2254(d)) (quotation marks omitted).

A decision is "contrary to" federal law if it conflicts with the governing rule set forth by the United States Supreme Court, or arrives at a different result than the Supreme Court when faced with materially indistinguishable facts.  *Id.* (citing *Kimbrough v. Sec'y, Dep't of Corr.*, 565 F.3d 796, 799 (11th Cir. 2009)).  "An

5

'unreasonable application' of clearly established federal law occurs when the state court correctly identifies the governing legal principle . . . but unreasonably applies it to the facts of the particular case." *Id.* (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)) (quotation marks omitted). This Court has emphasized the difference between an "unreasonable" and an "incorrect" application of federal law. *Terrell*, 744 F.3d at 1261. As we explained in *Terrell*, even a "strong case for relief" does not necessarily mean that the state court's contrary conclusion was "unreasonable." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)) (quotation marks omitted). *See also Loggins v. Thomas*, 654 F.3d 1204, 1220 (11th Cir. 2011) (habeas relief is not available if fairminded jurists could agree with the state court's decision).

Likewise, a state court's factual findings are not "unreasonable" just because the federal habeas court would have viewed the facts differently if it had considered them in the first instance. *Hittson v. GDCP Warden*, 759 F.3d 1210, 1230 (11th Cir. 2014). Rather, a state court's factual findings are only unreasonable if "no fairminded jurist could agree" with them. *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) (citing *Harrington*, 562 U.S. at 102) (quotation marks omitted). *See also Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1293-94 (11th Cir. 2015) ("The Supreme Court has found state factual findings unreasonable under § 2254(d)(2) when the direction of

6

the evidence, viewed cumulatively, was too powerful to conclude anything but [the petitioner's factual claim]") (quoting *Miller-El v. Dretke*, 545 U.S. 231, 265 (2005)) (quotation marks omitted).

**B.    Petitioner's *Miranda* Claim**

Petitioner contends that, when he asked one of the officers who arrested him if he could talk to his attorney, he invoked his *Miranda* right to have counsel present during any subsequent questioning.  The recorded interview reflects that Petitioner advised Moore of his previous request for an attorney.  Rather than concluding the interview, Moore sought a *Miranda* waiver and resumed his questioning.  Petitioner argues that Moore thereby violated *Miranda* and the Supreme Court's subsequent admonition that an accused who invokes his right to have counsel present during questioning "is not subject to further interrogation by the authorities until counsel has been made available to him."  *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).  According to Petitioner, the Florida appellate court's adverse ruling was contrary to or an unreasonable application of clearly established federal law, and was based on an unreasonable determination of the facts.  We disagree.

1.    The state court properly identified the governing legal principles.

The Florida appellate court's decision clearly was not "contrary to" federal law.  Beginning with *Miranda* itself, the Florida court cited and accurately

7

described the holdings of the most relevant Supreme Court cases. *Pardon*, 930 So. 2d at 701-703. The Florida court noted that *Miranda* "require[s] the police to unequivocally honor an arrestee's request not to speak to the police without counsel." *Id.* at 702. Quoting extensively from *Edwards*, the court further recognized that an accused, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* (quoting *Edwards*, 451 U.S. at 484-85). This is a correct statement of the legal principles that govern Petitioner's claim.

2.    The state court's decision was not an "unreasonable application" of the above authorities.

Although the Florida court acknowledged that the police must scrupulously comply with the *Miranda-Edwards* rule, it held that the rule was not implicated here because Petitioner was not subject to interrogation or imminent interrogation when he inquired about an attorney. *Id.* In support of its holding, the court cited Supreme Court authority indicating that (1) *Miranda* safeguards only apply when a defendant is subject to "custodial interrogation" and (2) "custodial interrogation" must involve something more than merely being in custody. *Id.* (citing *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980) ("the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody,

8

but rather where a suspect in custody is subjected to interrogation"). Specifically, the Supreme Court has explained that "interrogation" in the *Miranda* context refers either to "express questioning" or other "words or actions on the part of the police (other than those normally attendant to arrest and custody)" that are likely to elicit an incriminating response. *Innis*, 446 U.S. at 301. Based on the evidence presented, the Florida court concluded that although Petitioner was in custody, he was not subject to questioning or other "words or actions" likely to elicit incriminating information when he inquired about an attorney. *Pardon*, 930 So. 2d at 702.

Furthermore, the Florida court rejected the idea that Petitioner could have "anticipatorily invoked" his *Miranda* right to counsel before interrogation was imminent. *Id.* According to the court, "requiring the invocation [of the right to counsel] to occur either during custodial interrogation or when it is imminent strikes [the healthiest] balance between the protection of the individual from police coercion on the one hand and the State's need to conduct criminal investigations on the other." *Id.* (quoting *Ault v. State*, 866 So. 2d 674, 686 (Fla. 2003)) (quotation marks omitted). Petitioner conceded that he was fully apprised of his *Miranda* rights and that he did not invoke, and in fact repeatedly disavowed, his right to counsel just prior to his interview with Moore, when his interrogation did become imminent. *Id.* at 701. The Florida court thus held that Petitioner's interview did

9

not violate the *Miranda-Edwards* rule, and that the interview was properly admitted into evidence. *Id.* at 702-04.

The Florida court's decision was not unreasonable. Supreme Court authority supports its conclusion that the *Miranda-Edwards* safeguards only apply when a defendant is undergoing or imminently subject to interrogation and not when the defendant is merely in custody. *See Innis*, 446 U.S. at 300 ("'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself.") and *McNeil v. Wisconsin*, 501 U.S. 171, 177-78 (1991) (noting that the *Miranda-Edwards* guarantee "relates only to custodial interrogation"). The evidence in this case suggests that although Petitioner was in custody when he inquired about an attorney, he was not undergoing or imminently subject to "interrogation." *See Pardon*, 930 So. 2d at 701. Moreover, the Supreme Court has never held that a defendant can invoke his *Miranda* rights anticipatorily. *McNeil*, 501 U.S. at 182 n. 3. *See also Bobby v. Dixon*, 132 S. Ct. 26, 29 (2011) (quoting *McNeil* for the proposition that "this Court has never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation'") (quotation marks omitted). Thus, the Florida court's holding that Petitioner's interrogation did not violate the *Miranda-Edwards* rule was a reasonable application of the governing Supreme Court precedents.

10

3.   The state court's decision was not based on an unreasonable determination of the facts in light of the evidence in the record.

Finally, Petitioner's argument that the Florida court's decision was based on an unreasonable determination of the facts consists of little more than a conclusory assertion. Petitioner does not support the assertion with any more detailed argument or even identify the factual determinations that he claims to be unreasonable. Based on his arguments below, we assume Petitioner's position to be that the Florida court unreasonably determined that interrogation was not "imminent" when Petitioner asked about an attorney. Petitioner argued in the district court that there were no facts in the record to support this conclusion. Again, we disagree.

Indeed, there is plenty of evidence in the record to support the Florida court's finding. Petitioner acknowledged during the interview that "there was no questioning going on" when he inquired about an attorney. There is no evidence that Petitioner, at the time of the inquiry, was otherwise subjected to any "words or actions on the part of the police" that were likely to elicit incriminating information. *Innis*, 446 U.S. at 301. About three hours after the inquiry, and just prior to his interview, Petitioner equivocated when asked whether he had previously invoked his right to an attorney, stating "Yeah, I did that. No, I'm going to put no." He then clarified that he had no desire to talk to an attorney, and wanted to waive his *Miranda* right to have an attorney present during questioning.

11

Based on this evidence, the Florida appellate court's factual finding was not unreasonable.

### III. CONCLUSION

For the reasons stated above, we affirm the denial of Petitioner's § 2254 petition for a writ of habeas corpus.

**AFFIRMED.**