**UNITED STATES of America,**
**Plaintiff,**

v.

**Kurt KAVOUKIAN, Defendant.**

**No. 01–CR–17 (LEK).**

United States District Court,
N.D. New York.

Jan. 14, 2002.

Sara M. Lord, Assistant United States Attorney, for plaintiff.

Paul J. Evangelista, Assistant Public Defender, for defendant.

### MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

Presently before the Court is defendant Kurt Kavoukian's Motion to Dismiss the indictment based on a violation of Defendant's Sixth Amendment Rights. For the reasons set forth below, Defendant's motion is DENIED.

## I. BACKGROUND

Defendant was indicted in this Court on January 17, 2001, for possessing three firearms in violation of 18 U.S.C. § 922(g)(9)[1]. Superseding indictments were filed on March 28, 2001,[2] July 18, 2001,[3] and August 1, 2001,[4] respectively. During Defendant's initial appearance before the Court, his girlfriend, Christine McCann, approached Bureau of Alcohol, Tobacco, and Firearms ("ATF") agent Michael Lawrence ("Agent Lawrence") about the possibility of retrieving weapons seized from her as part of the investigation against Defendant.

On March 8, 2001, Ms. McCann telephoned Agent Lawrence to let him know that she had discovered various papers of Defendant that made her fear for her life. Additionally, she told Agent Lawrence that during her visit with Defendant at the Albany County Jail, Defendant made threats against him. After meeting with Ms. McCann over the course of the next week, Agent Lawrence decided to bring Defendant's alleged threats against him to the attention of the ATF and the U.S. Attorney's Office. The ATF decided to open an independent investigation against Defendant to determine whether Defendant actually threatened Agent Lawrence's life.

---

1. Section 922(g)(9) states that:
   It shall be unlawful for any person ... who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
   18 U.S.C. § 922(g)(9).
   Defendant was previously convicted on November 1, 1996, in Washington County Court, New York State, of a class A misdemeanor, to wit, Menacing in the Second Degree in violation of New York Penal Law § 120.14.

2. The first superseding indictment added four additional violations of 18 U.S.C. § 922(g)(9).

3. The second superseding indictment added two counts, production of a firearm silencer in violation of 26 U.S.C. §§ 5822, 5861(f) and 5871; and possession of a firearm silencer not registered in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871.

4. The third superseding indictment added one count, possession of a firearm silencer in violation of 18 U.S.C. § 922(g)(9).

To lead this separate investigation, Agent Lawrence enlisted the help of fellow ATF agent Mark Maher ("Agent Maher"). Agent Lawrence and Agent Maher decided that they needed to obtain further evidence about the alleged threats as part of their investigation. They approached Ms. McCann and asked her if she would be willing to wear a wiretap during a visit with Defendant at the Albany County Jail.

Because Defendant was represented by an attorney in the above captioned case, and Agents Lawrence and Maher wanted to prevent the possibility of unlawfully acquiring any confidential information about Defendant's trial strategy and other facts pertaining to his defense, they warned Ms. McCann to discuss only the alleged threats Defendant made against Agent Lawrence. Ms. McCann eventually consented to obtain the wiretap evidence requested and both Agents Lawrence and Maher accompanied her to the Albany County Jail on March 31, 2001. While there, Agent Lawrence was prevented from hearing Ms. McCann's conversation with Defendant since he was the case agent assigned to the above captioned case.

At the conclusion of the wiretapped conversation, Agent Maher informed Agent Lawrence that the taped conversation did not contain any threats against him. Both officers testified at the Court's July 23, 2001 hearing that Agent Lawrence was never told anything further about the tape's contents. The Court conducted an in camera review of the tapes on August 2, 2001 in order to independently ascertain whether the tapes contained any sensitive information about Defendant's trial strategy, and to prevent the disclosure of any

such information to Plaintiff. The Court's findings of fact as they relate to the contents of that tape were released on September 4, 2001.

The Court found that the tape contained some information regarding Defendant's trial strategy in this action. For example, there were portions of the tape where Ms. McCann asked Defendant how he intended to defend himself from the charges pending against him. The tape also contained sections where Defendant explained to Ms. McCann the nature of his defense. Additionally, Ms. McCann and Defendant discussed specific factual evidence related to the pending charges. As a result of this conversation, Defendant now makes this Motion to Dismiss, alleging that the disclosure of Defendant's trial strategy is prejudicial to his defense.

## II. DISCUSSION

### A. Sixth Amendment Right To Counsel

■■■■ The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const.Amend. VI. The right to counsel attaches at the initiation of adversarial proceedings, "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (plurality opinion); *see also Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, (1964)[5]; *Brewer v. Williams*, 430 U.S. 387, 401, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). The initiation of judicial criminal proceed-

---

**5.** After the defendant in *Massiah* had been indicted, the defendant was involved in an incriminating conversation with a wired co-defendant. An agent who overheard the conversation testified at trial as to the contents of that conversation. The Supreme Court held that once adversarial judicial proceedings have commenced against an individual, the Sixth Amendment prohibits the extraction of incriminating statements from an indicted person without presence of counsel.

ings is the starting point of our adversarial criminal justice system because "the government has committed itself to prosecute, and [it is] only then that the adverse positions of government and defendant have solidified." *Kirby*, 406 U.S. at 689, 92 S.Ct. 1877. "It is this point, therefore, that marks the commencement of the 'criminal. prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." *Kirby*, 406 U.S. at 690, 92 S.Ct. 1877. Once the Sixth Amendment right to counsel has attached, any incriminating statements deliberately elicited from the accused may not by used as evidence at trial. *See Brewer v. Williams*, 430 U.S. 387, 399, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (holding that defendant's incriminating statements, made in response to the "Christian burial speech" by a police officer during a car ride, without presence of counsel, were inadmissible at trial because the officer "deliberately and designedly set out to elicit information" from the defendant).

▆▆▆ The Supreme Court has held that the Sixth Amendment right to counsel is "offense-specific." *See McNeil v. Wisconsin*, 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991); accord *Texas v. Cobb*, 532 U.S. 162, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001) (holding that the Sixth Amendment right to counsel attaches only to charged offenses, and there is no exception for uncharged crimes that are "factually related" to a charged offense). Therefore, the use of incriminating statements deliberately elicited from the accused without the presence of counsel is prohibited only in regard to those charges for which the accused's Sixth Amendment right to counsel has already attached. *See McNeil*, 501 U.S. at 177, 111 S.Ct. 2204. The Sixth Amendment right "cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *McNeil*, 501 U.S. at 175, 111 S.Ct. 2204 (*quoting United States v. Gouveia*, 467 U.S. 180, 188, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984) and *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)). The Court reasoned that the Sixth Amendment right to counsel is offense-specific because law enforcement agents "have an interest ... in investigating new or additional crimes [after an individual is formally charged with one crime.]" *Maine v. Moulton*, 474 U.S. 159, 179, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985). "[T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities." *Id.* at 180, 106 S.Ct. 477. Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, therefore, admissible at a trial of those offenses. *See McNeil*, 501 U.S. at 176, 111 S.Ct. 2204.

▆▆▆ In the case at hand, Defendant's Sixth Amendment right to counsel clearly attached, and there is no dispute that Defendant is represented by counsel in regards to the indicted charges. After the initial indictment the government received credible information as to Defendant's possible involvement in criminal activity unrelated to the pending charges. Ms. McCann informed ATF agents that Defendant threatened the life of Agent Lawrence, a possible violation of 18 U.S.C. § 111 (assaulting, resisting, or impeding certain officers or employees) and 18 U.S.C. § 115 (influencing, impeding, or re-

taliating against a Federal official by threatening or injuring a family member). In order to investigate this possible threat, the agents arranged for Ms. McCann to wear a wire during a visit with Defendant at the Albany County Correctional Facility. Ms. McCann was instructed not to discuss any aspect of the case pending against Defendant.

The agents' investigation into the possible threats to Lawrence's life is entirely proper. There is no violation of Defendant's Sixth Amendment right to counsel based solely on the agent's further investigation. As the Supreme Court has reasoned, law enforcement agents have an interest in investigating new or additional crimes, even if the investigations require surveillance of individuals already under indictment. *See Maine v. Moulton,* 474 U.S. 159, 179–80, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); *see also Texas v. Cobb,* 532 U.S. 162, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001).

**B. Prejudice**

■ The Sixth Amendment is not violated unless the alleged violation, in this case interference with the attorney-client relationship through the disclosure of trial strategy, results in prejudice to the defendant at trial. The Court must determine whether there is a realistic possibility that the government will gained an advantage. See *United States v. Ginsberg,* 758 F.2d 823, 833 (2d Cir.1985) (holding that a defendant, in order to make out a violation of his Sixth Amendment rights, must establish that "privileged information [was] passed to the government or that the government ... intentionally invaded the attorney client relationship, and resulting prejudice"). In this case, there is no realistic possibility that the government has gained an advantage and, therefore, no Sixth Amendment violation occurred, notwithstanding the invasion of the attorney-client relationship.

Defendant's Sixth Amendment claim rests on the fact that during Ms. McCann's conversation with Defendant, he discussed, in general terms, the basis for his defense as to the pending charges. Defendant argues that during the conversation at the jail, Ms. McCann specifically inquired about Defendant's trial strategy, his defenses, and evidence that would be presented at trial. Defendant claims that after the conversation at the jail, the prosecution's investigation changed focus in order to address Defendant's defense strategy. As evidence of this claim, Defendant argues that on May 1, 2001, the government turned over trial transcripts relating to Defendant's prior crime of domestic violence. These transcripts were specifically mentioned by Defendant in his conversation with Ms. McCann. Further, on May 3, 2001, the government turned over photos that Defendant claims are relevant to countering his defense. Lastly, on May 6, 2001, a second transcript was turned over dealing with Defendant's relationship with Zoe Kingsley. Defendant claims that the additional items turned over to Defendant after the Government's April 10, 2001 letter, which stated that all documents relating to the case against Defendant had been turned over, is proof that the government learned of Defendant's defense strategy and took steps to undermined his defense.

Defendant's defense strategy, which he claims was "revealed" to the government by the taped conversation, rests on whether Defendant's misdemeanor conviction of Menacing in the Second in violation of New York Penal Law § 120.14 is a proper predicate offense for a violation of 18 U.S.C. § 922(g)(9). However, on April 11, 2001, Defendant filed a Memorandum of Law with this Court, seeking an order

dismissing the indictment.[6] In that Memorandum, Defendant argued that the predicate offense did not meet the definition of a "misdemeanor crime of domestic violence" as defined in 18 U.S.C. § 921(a)(33)(A).[7] This occurred just one day after the government's April 10, 2001 letter stated that all documents relating to the case had been turned over. In light of Defendant's submission to the Court, the Government was put on notice of Defendant's defense.

It is not beyond reason to believe that the information turned over by the government was obtained as a result of Defendant's filing, rather than as a result of the taped conversation between Defendant and Ms. McCann. Furthermore, AUSA Edward P. Grogan's Affidavit states that the defense counsel and AUSA had several conversations in January and February 2001 concerning the case. During this time period, the attorneys spoke about the underlying misdemeanor conviction and the fact that Defendant's relationship with Zoe Kingsley would be an issue. They also discussed whether a pretrial ruling should be sought to determine whether the misdemeanor conviction qualifies as a predicate offense to § 922(g)(9). For these reasons, Defendant's motion is DENIED.

The Court notes that previously, a Motion in Limine was submitted by the government, requesting that the Court determine whether Defendant's prior misdemeanor conviction under New York Penal Law § 120.14 is a proper predicate offense as defined in 18 U.S.C. § 921(a)(33)(B).[8] However, the issue in this case, as it relates to the § 922(g)(9) charges, is whether Defendant's prior misdemeanor conviction meets the definition of a "misdemeanor crime of domestic violence" as defined in 18 U.S.C. § 921(a)(33)(A). The Court therefore orders that the parties submit to the Court, in writing, Memoranda of Law

**6.** This Motion to Dismiss the Indictment was denied by this Court by an Order dated June 22, 2001.

**7.** Section 921(a)(33)(A) provides that:
Except as provided in subparagraph (C), the term "misdemeanor crime of domestic violence" means an offense that—
(i) is a misdemeanor under Federal or State law; and
(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.
18 U.S.C. § 921(a)(33)(A).

**8.** Section 921(a)(33)(B) provides that:
(i) A person shall not be considered to have been convicted of such an offense for purposes of this chapter, unless—
(I) the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case; and
(II) in the case of a prosecution for an offense described in this paragraph for which a person was entitled to a jury trial in the jurisdiction in which the case was tried, either
(aa) the case was tried by a jury, or
(bb) the person knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise.
(ii) A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.
18 U.S.C. § 921(a)(33)(B).

addressing the issue of whether Defendant's prior misdemeanor conviction under New York Penal Law § 120.14 is a proper predicate offense for a violation of 18 U.S.C. § 922(g)(9).

## CONCLUSION

For the reasons stated above, it is hereby:

ORDERED that Defendant's Motion to Dismiss the indictment based on a violation of Defendant's Sixth Amendment Rights is DENIED; and it is further

ORDERED that each party submit to the Court, by December 19, 2001, a Memorandum of Law addressing the issue of whether Defendant's prior misdemeanor conviction under New York Penal Law § 120.14 is a proper predicate offense as defined in 18 U.S.C. § 921(a)(33)(A); and it is further

ORDERED that the Clerk of the Court shall serve copies of this order by regular mail upon the parties to this action.

IT IS SO ORDERED.