**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 05-4138**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

EVERETT FRANCIS ROBINSON, a/k/a Six-Nine,

Defendant - Appellant.

_____

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Peter J. Messitte, District Judge.  (CR-
02-227)

_____

Argued:  January 31, 2006          Decided:  June 29, 2006

_____

Before WILKINS, Chief Judge, and MICHAEL and TRAXLER, Circuit
Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** Patryk Jerry Drescher, ROPES & GRAY, L.L.P., Washington,
D.C., for Appellant.  Paul M. Tiao, Assistant United States
Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore,
Maryland, for Appellee.  **ON BRIEF:** Patricia E. Campbell, ROPES &
GRAY, L.L.P., Washington, D.C., for Appellant.  Allen F. Loucks,
United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Everett Francis Robinson appeals his convictions for possession of cocaine with the intent to distribute, see 21 U.S.C.A. § 841(a)(1) (West 1999), and conspiracy to distribute cocaine and cocaine base, see 21 U.S.C.A. § 846 (West 1999). He asserts that (1) the district court violated his Sixth Amendment Confrontation Clause rights, (2) there was insufficient evidence to support his conviction for conspiracy, and (3) the district court erred in failing to suppress statements he made to agents of the Drug Enforcement Agency (DEA). We conclude that the district court correctly decided the issues before it, and accordingly, we affirm.

I.

In July 2001, Detective Phil Joseph of the St. Mary's County, Maryland Sheriff's Department received a telephone call from a confidential informant who claimed that cocaine belonging to Robinson was hidden in a hallway ceiling of a local motel. Joseph searched the ceiling and recovered 260 grams of cocaine and cocaine base.

Detective Joseph, pretending to be a maintenance man from the motel named "Bobby," then called Robinson to discuss the "stuff" he found "in the motel near room 220." J.A. 916. Robinson said that "it might be [his]," id. at 917, and a series of telephone calls followed between "Bobby" and Robinson relating to these items and

2

a plan to meet. Rather than meet with "Bobby" personally, Robinson arranged for one of his customers, Perry Brown, to act as the middleman. Based upon the narcotics seized at the motel and the series of telephone calls between Robinson and "Bobby," a state arrest warrant for Robinson was issued. Robinson was arrested and released pending trial but failed to appear in court. As a result, a second state arrest warrant was issued.

On April 12, 2002, Scott Morgan, a long-time customer of Robinson's who was working as an informant, called Robinson at the request of state law enforcement to set up a meeting. When Robinson arrived for the meeting, deputies attempted to arrest him. Robinson fled in his vehicle, hitting one of the patrol cars as he sped away, and a chase involving three police cars ensued.

Robinson was eventually captured and arrested on the state warrant. Police searched the area surrounding Robinson and recovered 461.5 grams of cocaine and 288 grams of cocaine base. After being released on bail, Robinson telephoned Detective Joseph and suggested that they meet the following day to discuss the case against him. Detective Joseph arrived for the meeting accompanied by DEA agents, who arrested Robinson on federal narcotics charges.

A jury found Robinson guilty on both counts of the indictment, and the district court sentenced him to 264 months imprisonment.

II.

Robinson first claims that his Sixth Amendment Confrontation Clause rights were violated when the district court refused to compel the Government to produce unredacted copies of Morgan's informant contact sheets and to disclose the identity of the confidential informant. We conclude that even if the district court erred in these respects, the errors did not prejudice Robinson. See Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) (holding that a Confrontation Clause violation may be reviewed for harmlessness).

The Constitution guarantees the right of a criminal defendant "to be confronted with the witnesses against him." U.S. Const. amend. VI. "The main and essential purpose of confrontation is to secure for the [defendant] the opportunity of cross-examination." Davis v. Alaska, 415 U.S. 308, 315-16 (1974) (emphasis & internal quotation marks omitted). Indeed, "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." Id. at 316. Nevertheless, the district court retains "wide latitude ... to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Van Arsdall, 475 U.S. at 679. With these principles in mind, we review Robinson's particular claims.

4

A.

At trial, Morgan testified that he made controlled narcotics purchases from Robinson, provided information to law enforcement, and received compensation for his assistance. Using informant contact sheets from which certain information had been redacted, Robinson cross-examined Morgan extensively regarding the latter's activities as a confidential informant, including when he began providing information and the number of times he was paid. Although the cross-examination was hampered somewhat by Morgan's claimed inability to recall particular transactions without knowing the name of the target--information that had been redacted from the contact sheets--the redacted contact sheets did not prevent Robinson from obtaining testimony from Morgan about the dates of his work as an informant. In fact, Robinson demonstrated that Morgan's testimony about dates was inconsistent.

The district court refused to order the Government to provide unredacted contact sheets on the basis that redaction of target names and transaction locations was necessary to protect the integrity of ongoing investigations and to ensure the safety of those involved in them. Even if this ruling was error, the error was harmless. Morgan accepted the accuracy of the information in the contact sheets, obviating the need to use the names of the targets in order to prove that Morgan was repeatedly paid for information.

5

Robinson also argues that the district court erred in allowing Detective Joseph to testify that he searched the motel hallway ceiling in response to a tip from a confidential informant.[1] He maintains that the informant's statement was testimonial, and thus inadmissible unless the informant was unavailable to testify and Robinson had a prior opportunity to cross-examine the informant. See Crawford v. Washington, 541 U.S. 36, 59 (2004). Because Robinson did not object to Detective Joseph's testimony regarding the tip, we review for plain error.[2] See Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 731-32 (1993). To establish plain error, Robinson must show that an error occurred, that the error was plain, and that the error affected his substantial rights. See Olano, 507 U.S. at 732. Even if Robinson makes this three-part showing, correction of the error remains within our discretion, which we should exercise only if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (internal quotation marks & alteration omitted).

---

[1]Robinson does not challenge the validity of the search itself.

[2]Indeed, in his opening statement defense counsel told the jury that a confidential informant had relayed to Detective Joseph that "Mr. Robinson is staying at the Super 8 Motel and has hidden drugs in the ceiling." J.A. 135. Defense counsel further highlighted this information about Robinson in his cross-examination of Detective Joseph. J.A. 212-13.

Assuming, without deciding, that the district court plainly erred in allowing Detective Joseph to testify about the informant's tip, Robinson cannot demonstrate that the error affected his substantial rights because other substantial evidence connected Robinson to the narcotics at the motel, including the series of telephone calls between Robinson and "Bobby" and Brown's testimony.

III.

Robinson next challenges the sufficiency of the evidence to support his conspiracy conviction. He argues that no conspiracy existed or could be proven beyond a reasonable doubt because both Brown and Morgan were government informants. See United States v. Chase, 372 F.2d 453, 459 (4th Cir. 1967) ("[I]t is ... well-established that one who acts as a government agent and enters into a purported conspiracy in the secret role of an informer cannot be a co-conspirator."). We must sustain Robinson's conviction if there is substantial evidence to support it when the evidence and all reasonable inferences from it are viewed in the light most favorable to the Government. See United States v. Burgos, 94 F.3d 849, 862-63 (4th Cir. 1996) (en banc).

The evidence at trial demonstrated that neither Brown nor Morgan entered into a conspiracy with Robinson in the role of a government informer. Morgan testified that he began purchasing cocaine from Robinson during the summer of 2001. He began

assisting law enforcement in early 2002 but did not sign a formal cooperation agreement until that summer. Brown testified similarly, stating that he and his girlfriend purchased cocaine from Robinson from 2000 until the middle of 2001. Brown also stated that he provided information to police on an informal basis in 1998 but did not provide any other assistance until 2001. This evidence, when viewed in the light most favorable to the Government, was sufficient to allow a reasonable factfinder to conclude that Robinson participated in a conspiracy to sell narcotics.

IV.

Finally, Robinson argues that the district court erred in failing to suppress inculpatory statements he made while in the custody of DEA agents. Robinson argues that these statements (1) were inadmissible because he had not been properly advised of his constitutional rights pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436, 478-79 (1966), and (2) were involuntary because he had been denied access to an attorney, <u>see</u> <u>id.</u> at 474-75. In reviewing the denial of a motion to suppress, we defer to the factual findings of the district court unless they are clearly erroneous but consider its legal conclusions de novo. <u>See</u> <u>United States v. Holmes</u>, 376 F.3d 270, 273 (4th Cir. 2004).

8

In Miranda, the Supreme Court held that in order to protect a criminal suspect's Fifth Amendment privilege against compelled self-incrimination, he must be advised before a custodial interrogation that, inter alia, he has the right to the presence of an attorney during questioning.  See Miranda, 384 U.S. at 478-79. If the suspect requests counsel, "the interrogation must cease until an attorney is present."  Id. at 474.  The Supreme Court later "reconfirm[ed]" the Miranda principles regarding the right to counsel during custodial interrogation and held that once a suspect invokes that right, police may not interrogate the suspect further "until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."  Edwards v. Arizona, 451 U.S. 477, 484-85 (1981).  Any statements obtained by police in violation of Miranda and Edwards--including statements that would otherwise be considered voluntary--are presumed involuntary and are inadmissible in the Government's case-in-chief at trial.  See Oregon v. Elstad, 470 U.S. 298, 307 (1985); see also McNeil v. Wisconsin, 501 U.S. 171, 177 (1991).

At the suppression hearing, the arresting DEA agent testified that Robinson, in the presence of another agent, was properly advised of his rights and afterward was willing to cooperate during questioning.  The record also reveals that Robinson, after agreeing

to cooperate with agents, was interviewed in a comfortable setting in the presence of several agents, that he was not handcuffed, that none of the agents were armed, and that no one made verbal or physical threats against him or offered him promises in exchange for his cooperation.

After hearing the testimony, the district court found that Robinson had been properly advised of his rights. Because this finding was not clearly erroneous, we affirm the resulting denial of the motion to suppress.

B.

Although the district court determined at the suppression hearing that Robinson's statements were voluntary, Robinson--who did not testify at the suppression hearing--testified at trial that his statements were not voluntary because he was not allowed to call his attorney and because the officers threatened that he had "better tell them something or [he was] never going home." J.A. 738.

Robinson was entitled to present evidence at trial that bore upon the reliability and credibility of his statements even after the district court ruled that his confession was voluntary. See Crane v. Kentucky, 476 U.S. 683, 691 (1986); United States v. Martin, 369 F.3d 1046, 1059 (8th Cir. 2004) (holding that voluntariness and reliability of a confession are questions of fact

10

for the jury). Robinson's testimony concerning voluntariness was, however, challenged by the Government through cross-examination and the testimony of rebuttal witnesses. Based upon the entirety of the evidence presented, a rational jury could conclude that Robinson's statements were voluntary.

V.

For the reasons set forth above, we affirm Robinson's convictions.

AFFIRMED