IN THE COURT OF CRIMINAL APPEALS


OF TEXAS







No. AP-75,061






JOHN MANUEL QUINTANILLA, JR., Appellant



v.



THE STATE OF TEXAS






Appeal of Case 03-3-20,037-D of the


377th District Court of


Victoria County






 Womack, J., delivered the opinion for a unanimous Court.



 A jury found the appellant guilty of the November 24, 2002 capital murder of Victor Billings.
The trial court sentenced the appellant to death based on the jury's verdict on the issues of punishment. (1)
In the appeal to this court, which a statute requires, (2) the appellant raises two points of error. We find
them to be without merit, and we affirm the judgment.

I. The Facts

 The appellant was arrested on January 14, 2003 on a warrant from Calhoun County for an
unrelated aggravated robbery. At that time, no charges had been brought nor had a warrant issued for
the instant offense.

 At 2:30 p.m. on January 15, 2003, the appellant was taken before a magistrate for the warnings
and other proceedings that Article 15.17 of the Code of Criminal Procedure required. (3) The appellant
requested that an attorney be appointed.

 At approximately 4:00 p.m., Investigator Abel Arriazola of the Victoria County Sheriff's Office
and Investigator Mike Kovorek of the Calhoun County Sheriff's Department began interrogating the
appellant. They recorded the interview on a videotape, later labeled State's Exhibit 1a. Prior to
questioning, Arriazola gave the appellant his Miranda warnings. The appellant indicated he understood
his rights and wished to continue with the interview. The appellant made no statements regarding the
capital murder, nor did he invoke his right to counsel, during this portion of the interview.

 At approximately 7:55 p.m., the officers and the appellant took a short break, which marked
the end of State's Exhibit 1a. A new videotape, which eventually would be labeled State's Exhibit 1b,
was inserted in the videotape recorder. The appellant and Kovorek returned to the room at about 8:10
p.m. to continue the interrogation; then Kovorek left the room again. A short time after that, at about
8:35 p.m., Arriazola returned, now with Detectives Alfred Santiago and Tom Copeland of the Victoria
Police Department. Arriazola told the appellant, "Nothing has changed from the time I've talked to
you," by which he meant, according to his testimony in the pre-trial hearing, "that [the appellant's] rights
were still in full effect." Santiago and Copeland testified that they were aware that Arriazola had already
informed the appellant of his Miranda rights, and so they began their interrogation, which included
questions regarding the capital murder, without re-administering the warnings. About fifteen minutes into
the interview, however, the detectives reminded the appellant of his Miranda rights and that Arriazola
had read him his rights; the appellant acknowledged that he remembered and understood those rights.
Santiago later acknowledged in his pre-trial testimony that he inadvertently left out the warning that an
attorney would be appointed if the appellant could not afford to hire one. At no time during the
interview did the appellant invoke his right to counsel. During the interrogation by Santiago and
Copeland, the appellant made inculpatory statements regarding the instant offense.

 As a result of a pre-trial hearing, the trial court entered the following required findings of fact
and conclusions of law (4) concerning the admissibility of the appellant's statement contained in State's
Exhibits 1a and 1b:

 -- the appellant received the Article 15.17 magistrate's warning on, and requested an
attorney for, the aggravated-robbery offense for which he had been arrested on the warrant
from Calhoun County;

 -- the appellant had not been arrested on the capital-murder offense in Victoria County
at the time of the interview;

 -- State's Exhibits 1a and 1b constituted one continuous interview, and therefore the
Miranda warnings Arriazola gave at the beginning of videotape 1a applied to the entire
interview;

 -- the Miranda warnings given by Arriazola complied with Article 38.22;

 -- the appellant freely, knowingly, and voluntarily waived his rights as to the capital
murder at the beginning of videotape 1a, including the right to a court-appointed attorney; and

 -- the appellant's statements regarding the Calhoun County aggravated robbery were
taken in violation of the Sixth Amendment, but this did not prohibit the admission of statements
as to other offenses.

 Portions of State's Exhibits 1a and 1b were consolidated into State's Exhibit 29, a videotape
that was then admitted into evidence at the guilt phase of the trial. State's Exhibit 29 contains only those
portions of the interview that relate to the offense at hand, including Arriazola's initial warnings to the
appellant, the introduction of Santiago and Copeland, the reminder of the appellant's Miranda
warnings, and the appellant's statements regarding the instant offense. All references to the Calhoun
County aggravated robbery and other extraneous offenses were omitted.

II. Admissibility of Appellant's Statement

 In point of error one, the appellant claims that the trial court erred in admitting State's Exhibit
29 on two grounds: that the videotaped statement regarding the instant offense was obtained in violation
of the Fifth Amendment "right to counsel," and also in violation of Article 38.22 of the Texas Code of
Criminal Procedure. We will address these grounds in turn.

Fifth Amendment Right to Counsel

 The Fifth Amendment right to counsel provides "prophylactic rights designed to counteract the
'inherently compelling pressures' of custodial interrogation." (5) The "right to counsel" under the Fifth
Amendment may be waived, but its invocation prevents any further interrogation of a suspect unless
counsel is present. (6) The Fifth Amendment right to counsel is not offense-specific, and it thus precludes
interrogation regarding any offense in the absence of counsel once the right has been invoked. (7)

 The appellant admits that he was informed of, and waived, his Fifth Amendment rights at the
beginning of the interview, as recorded on State's Exhibit 29. He argues that his request for counsel
when he appeared before the magistrate after being arrested for aggravated robbery serves as a non-offense-specific Fifth Amendment invocation of counsel, thereby rendering inadmissible even his
subsequent statements regarding the instant offense.

 The appellant seems to imply that his Fifth Amendment right to counsel was triggered by, at
least in part, the magistrate's act of reading the Article 15.17 warnings that comply with Miranda. (8)
However, the warnings themselves and the administration of those warnings do not confer the right. The
right stems from its narrow association with the process of police custodial interrogation, and can be
invoked only as a specific articulation of a desire for assistance of counsel with that process. (9)

 The appellant confuses the issue by interchanging Texas statutory provisions with U. S.
constitutional law throughout his brief. His constitutional argument is based on language he extracts from
Dowthitt v. State (10) and Articles 38.22 (11) and 15.17. (12) Also, by referring to the Article 15.17
magistration warnings as "Miranda" warnings, he implies that the Article 15.17 proceeding has Fifth
Amendment importance with regard to the right to counsel. It does not.

 The appellant cites Robinson v. State (13) to argue that this court supports his position. The issue
in Robinson, however, turned on whether the appellant had effectively requested assistance of counsel
at all. (14) The appellant in that case was warned not only by two magistrates, but -- more importantly to
the analysis -- twice by police as well. (15) The Court there did not identify precisely when the Fifth
Amendment right would have attached, but the statement the Court found to fail as a request for
counsel under the Fifth Amendment was made to police during interrogation, not to the magistrates. (16)

 The appellant here contends that our holding in Robinson implies that the Fifth Amendment
right to counsel attaches at an Article 15.17 magistration, because, he asserts, we found the appellant in
Robinson had not invoked his Fifth Amendment right when brought before the magistrates. Robinson,
however, does not stand for this proposition. The appellant ignores the critical fact that the appellant in
Robinson had also been warned by police prior to his interrogation, a fact that the Supreme Court has
identified as the narrow situation in which the Fifth Amendment right to counsel is implicated. We find
the appellant's Fifth Amendment argument unconvincing.

Article 38.22

 The appellant also claims that State's Exhibit 29 was admitted in error because the statement
contained therein was obtained in violation of Article 38.22 of the Code of Criminal Procedure. He
raises several issues under this claim.

 First, the appellant claims that he invoked his Article 38.22 "right to counsel" at his magistration
for aggravated robbery. Article 38.22 confers no such right. The statute governs the admissibility of an
accused's statement and, among its provisions, outlines the procedures that must be followed in order
to use that statement in a criminal proceeding. (17) The right conferred can better be expressed as a right
to receive warnings: the accused must be given the equivalent of Miranda warnings in order for his
statement as a result of custodial interrogation to be admissible. (18) The provision is satisfied merely by
giving the warnings, without any obligation to ensure that the substance of the warnings is carried out.
Section 3 of Article 38.22 applies to oral statements, and its provisions include the requirement of an
electronic recording (19) and the requirement that during the recording the suspect must receive Article
38.22 warnings and voluntarily waive his or her rights. (20)

 The appellant here does not suggest a violation of these requirements took place, and in fact the
record supports the conclusion that State's Exhibit 29 complied with these statutory requirements.
Further, the appellant acknowledges this court's holding that the warnings provision in Section 2 of
Article 38.22 applying to written statements -- that warnings must be given by the person "to whom the
statement is made" -- does not apply to oral statements. (21) Arriazola's warnings at the beginning of the
appellant's interview were therefore effective for the purposes of Article 38.22, despite the fact that
Santiago and Copeland were the officers present when the appellant made the statements at issue here.
It is inconsequential that Santiago's later warnings failed to comply with Article 38.22.

 Instead, the appellant argues: "Art. 38.22, Section 2(a), Texas Code of Criminal Procedure,
specifically provides that receiving from a magistrate the warning provided in Article 15.17 of the Code
of Criminal Procedure is sufficient to comply with the warnings requirement of Art. 38.22." (22) This is
essentially a rehashing of his Fifth Amendment argument: that since the appellant was warned by a
magistrate during an Article 15.17 proceeding in a manner complying with Article 38.22, and invoked
his right to counsel in that proceeding, his subsequent statement in the absence of counsel is inadmissible
under Article 38.22. This argument simply ignores the fact that Section 2 of Article 38.22 applies to
written, not oral, statements, and that a magistrate's Article 15.17 warnings are ineffective as to oral
statements, whose warnings must be given and waived on the actual recording. (23) Article 38.22, Section
3 requirements were met; the magistrate's warnings are irrelevant to this determination.

 The appellant also points to one particular warning given to him at his Article 15.17 proceeding
for aggravated robbery: the "right to have an attorney present during any interview with peace
officers." (24) The appellant seems to assert that "any interview" should be read literally to mean any
subsequent interview with police officers regarding any offenses, including those unrelated to that
charge for which the appellant was magistrated, and that this right was therefore violated when the
appellant was interviewed regarding the instant offense.

 The Supreme Court in McNeil expressly rejected an identical argument on policy grounds: (25)

 The proposed rule would  seriously impede effective law enforcement. . . . [M]ost
persons in pretrial custody for serious offenses would be unapproachable by police
officers suspecting them of involvement in other crimes, even though they have never
expressed any unwillingness to be questioned. Since the ready ability to obtain
uncoerced confessions is not an evil but an unmitigated good, society would be the
loser. Admissions of guilt resulting from valid Miranda waivers "are more than merely
'desirable'; they are essential to society's compelling interest in finding, convicting, and
punishing those who violate the law." (26)


The Court further noted:


 If the Miranda right to counsel can be invoked at a preliminary hearing, it could be
argued, there is no logical reason why it could not be invoked by a letter prior to arrest,
or indeed even prior to identification as a suspect. (27)


 The same reasoning applies to the appellant's argument here. We reject the appellant's Article
38.22 argument.

 Point of error one is overruled.

III. Admissibility of Penitentiary Packet

 In point of error two, the appellant claims the trial court erred in admitting his "pen packet,"
labeled State's Exhibit 133, at the punishment phase. He specifically objects to the omission of the
required seal on the certification page, which is required by Article 42.09 Section 8(b). (28) This section
provides:

 The Texas Department of Criminal Justice shall not take a defendant into custody under
this article until the designated officer receives the documents required by Subsections
(a) and (c) of this section. The designated officer shall certify under the seal of the
department the documents received under Subsections (a) and (c) of this section. A
document certified under this subsection is self-authenticated for the purposes of Rules
901 and 902, Texas Rules of Criminal Evidence. (29)


 The appellant's pen packet was certified by affidavit of the Chairman of Classification and
Records for the Texas Department of Criminal Justice -- Correctional Institutions Division, under the
seal of the State of Texas, instead of the seal of the Department. The appellant contends that this seal
was insufficient to meet the statutory requirement for certification. He argued at punishment that Article
42.09, Section 8, should be the controlling procedure. Because that procedure was not followed, he
submits, State's Exhibit 133 is not self-authenticating under Rules 901 and 902 and therefore should not
have been admitted.

 We need not address whether the seal on State's Exhibit 133 complies with the requirements of
Article 42.09 because this procedure is not the exclusive means of admitting a pen packet. Rather, it is
one of several possible ways of authenticating the document as a precondition to its admission into
evidence.

 At the punishment hearing, the trial court relied on Barker v. State (30) in overruling the
appellant's objection that the pen packet was not self-authenticated, referring to the Barker court's
finding that Article 42.09 is not the sole method of authenticating this type of document. In Barker, the
appellant had objected to the admission of his pen packets under Article 42.09, Section 8(b), claiming
they were inadequately certified by the records clerk instead of by the director. (31) The trial court
overruled his objection and admitted the documents. (32) The appeals court agreed with the state's
position that the documents met the requirements of Rule 902(4) for self-authentication and were not
admitted in error. (33) In so holding, the Court reasoned:

 We could interpret section 8(b) to require the actual director's signature for admission
of this particular class of public documents, when every other similar class would only
have to meet the broader and easier requirements of Rule 902(1) through (4). We
cannot imagine that this was the intent of the legislature in enacting section 8(b). Rather,
it is quite plausible that section 8(b)'s requirement is one automatic vehicle for
admission that the legislature enacted to provide a sure-fire method of admission, but
not an exclusive one. This seems the reasonable interpretation, while the interpretation
of exclusivity seems the absurd one. (34)


We find the Barker reasoning persuasive, and therefore hold that Code of Criminal Procedure Article
42.09, Section 8(b), is not the exclusive means of authenticating a pen packet.

 In the instant case, the Chairman of Classification and Records at TDCJID, in his affidavit,
certified that the pen packet contained "true and correct copies of the original records" that were on file
in his office and maintained in the regular course of business. The affidavit bears the seal of the State of
Texas. This certification provides sufficient evidence to support a finding that State's Exhibit 133 is
what its proponent claims it to be, and thus the pen packet was properly authenticated under Rule 901.
State's Exhibit 133 also satisfies the requirements for self-authentication under Rule 902(4) ("Certified
Copies of Public Records"). It is a copy of a public record, certified as correct by the custodian, by
certificate complying with Rule 902(1) ("Domestic Public Documents Under Seal").

 Point of error two is overruled.


IV. Conclusion

 We affirm the trial court's judgment.


Delivered: June 27, 2007.

Do Not Publish.
1. See Code Crim. Proc. art. 37.071, § 2(b), (e), (g).
2. Id., § 2(h).
3. When the appellant was arrested, Article 15.17(a) of the Code of Criminal Procedure read, "In each case
enumerated in this Code, the person making the arrest or the person having custody of the person arrested shall
without unnecessary delay . . . take the person arrested or have him taken before some magistrate . . . . The
magistrate shall inform in clear language the person arrested . . . of the accusation against him and of any affidavit
filed therewith, of his right to retain counsel, of his right to remain silent, of his right to have an attorney present
during any interview with peace officers or attorneys representing the state, of his right to terminate the interview at
any time, and of his right to have an examining trial. The magistrate shall also inform the person arrested of the
person's right to request the appointment of counsel if the person cannot afford counsel. The magistrate shall inform
the person arrested of the procedures for requesting appointment of counsel. . . . The magistrate shall also inform the
person arrested that he is not required to make a statement and that any statement made by him may be used against
him. The magistrate shall allow the person arrested reasonable time and opportunity to consult counsel and shall,
after determining whether the person is currently on bail for a separate criminal offense, admit the person arrested to
bail if allowed by law." Act of June 15, 2001, 77th Leg., R.S., ch. 1281, § 1, 2001 Tex. Gen. Laws 3074, 3075; Act of
June 14, 2001, 77th Leg., R.S., ch. 906, § 4, 2001 Tex. Gen. Laws 1800, 1801.
4. See Code Crim. Proc. art. 38.22, § 6.
5. McNeil v. Wisconsin, 501 U.S. 171, 176 (1991) (citing Miranda v. Arizona, 384 U.S. 436 (1966)).
6. Id., at 176-77 (citing Edwards v. Arizona, 451 U.S. 477 (1981)).
7. Id., at 177 (citing Arizona v. Roberson, 486 U.S. 675 (1988)).
8. Miranda v. Arizona, 384 U.S. 436 (1966).
9. McNeil, 501 U.S., at 178-79.
10. 931 S.W.2d 244 (Tex. Cr. App. 1996).
11. Code Crim. Proc. art. 38.22, §§ 2(a), 3(a)(2).
12. Code Crim. Proc. art. 15.17(a).
13. 851 S.W.2d 216 (Tex. Cr. App. 1991).
14. Id., at 222.
15. Id., at 222-23.
16. Id., at 223-24.
17. See Code Crim. Proc. art. 38.22, §§ 2, 3.
18. Id., at §§ 2(a), 3(a)(2).
19. Id., at § 3(a)(1) (a videotape complies).
20. Id., at § 3(a)(2).
21. See Dowthitt, 931 S.W.2d, at 258.
22. Appellant's brief, at 7.
23. Code Crim. Proc. art. 38.22, § 3(a)(2).
24. Code Crim. Proc. art. 15.17(a).
25. 501 U.S., at 180-81.
26. Ibid. (emphasis in original) (quoting Moran v. Burbine, 475 U.S. 412, 426 (1986)).
27. Id., at 182, n.3.
28. Code Crim. Proc. art. 42.09, § 8(b).
29. Ibid.
30. 931 S.W.2d 344 (Tex. App. -- Fort Worth 1996).
31. Id., at 348 (At the time of the trial in Barker, Article 42.09 required the "director," rather than a
"designated officer" allowed under the current statute, to certify these documents). 
32. Id.
33. Id., at 349.
34. Id., at 348-49.