[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13450
Non-Argument Calendar

_____

D.C. Docket No. 2:18-cr-00594-ACA-GMB-1

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

versus

BRIAN LANIER TURNER,

Defendant – Appellant,

.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(June 28, 2021)

Before NEWSOM, TJOFLAT, and ANDERSON, Circuit Judges.

PER CURIAM:

A Northern District of Alabama grand jury indicted Brian Lanier Turner for federal drug offenses.  Before trial, Turner moved to suppress statements he made to state and federal law enforcement officers prior to his indictment.  At the time Turner made the statements, five cases charging him with Alabama drug offenses were pending in the District and Circuit Courts of Blount County, Alabama.[1]  In this appeal, Turner argues that the U.S. District Court's denial of his motion to suppress violated his Sixth Amendment right not to be interrogated without the presence of the attorney who was representing him in the five state cases.  Because we find Turner's right to the presence of counsel had attached only as to those cases, we affirm Turner's conviction in the instant case.

I.

On June 22, 2018, two City of Oneonta[2] investigators and one Blount County investigator arrested Turner for distributing methamphetamine in violation of Alabama law on February 21, 2018.  The three investigators also arrested Turner for four additional violations of Alabama drug laws, including trafficking cocaine.  Turner was arraigned on the methamphetamine charge, and a preliminary hearing was held in the District Court of Blount County, after which the case was transferred to Circuit Court to await grand jury indictment.  The four additional

---

[1] The conduct giving rise to two of the state offenses constituted the basis of the federal offenses charged in the indictment.

[2] Oneonta is the county seat for Blount County.

2

charges remained pending in the District Court of Blount County.  Attorney John Floyd represented Turner in all the pending cases.[3]

On September 20, 2018, the Oneonta and Blount County investigators, together with Drug Enforcement Administration ("DEA") agent Domingo Gonzales, visited Turner at his home.  The purpose of the visit was to see whether Turner would be willing to cooperate with a DEA investigation into a drug trafficking organization headed by a man named Jose Martinez.  Martinez, the investigators knew, was one of Turner's main sources for cocaine and methamphetamine.

Turner received the investigators and Agent Gonzalez and admitted that he had purchased large quantities of methamphetamine and cocaine from Martinez. He also informed them that he sometimes purchased drugs from a man named David Gonzales.  That Turner had cases pending in the District and Circuit Courts of Blount County was mentioned only "briefly"; the officers told him they were just there to talk about the DEA investigation into the Martinez organization.

In November 2018, a Northern District of Alabama grand jury indicted Turner in the instant case for conspiring to possess with the intent to distribute 500 grams or more of methamphetamine and 500 grams or more of cocaine, in

---

[3] Floyd practiced law in Gadsden, Alabama.

violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and (b)(1)(B) (Count One), and using a communication facility—here, a telephone—to facilitate the commission of a felony, in violation of 21 U.S.C. § 843(b) (Count Two).

Prior to trial, Turner moved the District Court to suppress the statements he made to the investigators and Agent Gonzalez on September 20, 2018.  He argued that the Fifth Amendment required the suppression because Agent Gonzalez never gave him a *Miranda*[4] warning.  He also argued that the questioning violated his Sixth Amendment right to the presence of counsel because although he was represented by an attorney on the state court charges, his attorney was not present when Agent Gonzalez questioned him.

After an evidentiary hearing (at which Agent Gonzales was the sole witness), the District Court denied Turner's motion.  The Court determined that Turner's Fifth Amendment right to receive a *Miranda* warning did not apply because Turner was not in custody at the time he was questioned.  It also ruled his Sixth Amendment right to the presence of counsel in connection with the state law offenses for which he had been charged was not violated because the questioning did not relate to those offenses.

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

The statements Turner made on September 20, 2018 were admitted into evidence at trial through the testimony of Agent Gonzales, and a jury subsequently convicted Turner on Count One but acquitted him on Count Two. The District Court then sentenced him to 360 months' imprisonment.

On appeal, Turner challenges only the District Court's denial of his claim that under the Sixth Amendment, he was entitled to the presence of his attorney when he spoke to the investigators and Agent Gonzalez on September 20, 2018. He argues the District Court erred in admitting the statements because two of the charged state offenses were based on the same conduct the DEA was investigating and which led to the indictment in this case. But the Sixth Amendment right to counsel is offense specific, and at the time of the questioning, the right had attached only as to Turner's state court charges. Because the state and federal charges were necessarily distinct under the dual sovereignty doctrine, Turner's conviction is due to be affirmed.

## II.

We review a district court's denial of a motion to suppress under a mixed standard of review. The court's findings of fact are reviewed for clear error, but its application of law to those facts is reviewed *de novo*. *United States v. Ramirez*, 476 F.3d 1231, 1235 (11th Cir. 2007).

5

III.

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  An accused's right to counsel attaches once proceedings or charges are initiated against him, *McNeil v. Wisconsin*, 501 U.S. 171, 175, 111 S. Ct. 2204, 2207 (1991), and from that point onward he may not be interrogated without his counsel present, *United States v. Dixon*, 901 F.3d 1322, 1340 (11th Cir. 2018).

The Sixth Amendment right to counsel, however, is offense specific.  *United States v. Burgest*, 519 F.3d 1307, 1309–10 (11th Cir. 2008) (citing *McNeil*, 501 U.S. at 175, 111 S. Ct. at 2207).  The right does not interfere with the government's ability to use post-charge interrogations to gather evidence about offenses that have not yet been charged, so long as the charged and uncharged offenses are truly distinct.[5]  *McNeil*, 501 U.S. at 175–76, 111 S. Ct. at 2207–08; *Texas v. Cobb*, 532 U.S. 162, 173, 121 S. Ct. 1335, 1343 (2001).  "[W]here conduct violates laws of separate sovereigns," *e.g.*, state and federal governments, "the offenses are distinct for purposes of the Sixth Amendment right to counsel."

---

[5] In determining whether two offenses are truly distinct, we ask whether they require proof of the same facts.  *Texas v. Cobb*, 532 U.S. 162, 173, 121 S. Ct. 1335, 1343 (2001) (citing *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180 (1932)).

*Burgest*, 519 F.3d at 1310.  This is true even where "the offenses are identical in their respective elements." *Id.* at 1311 (quotation marks and citation omitted).

At the time Agent Gonzalez questioned Turner, his right to counsel had attached only as to his state charges.  Turner's argument that his state and federal charges are indistinct under the *Blockburger* test overlooks that the charges were necessarily distinct; they involved violations of the laws of separate sovereigns. *See id.* at 1310.

Turner asks us to recognize an exception to the dual sovereignty doctrine based upon the suggestion in *Bartkus v. Illinois*, 359 U.S. 121, 123–24, 79 S. Ct. 676, 678 (1959), that the doctrine may not apply where one sovereign is used as "a tool" of another sovereign, such that the two sovereigns ought to be treated as one. We've often declined to decide whether such an exception actually exists. *See United States v. 817 N.E. 29th Drive, Wilton Manors, Fla.*, 175 F.3d 1304, 1311 n.13 (11th Cir. 1999); *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1361 (11th Cir. 1994); *United States v. McRary*, 616 F.2d 181, 185 (5th Cir. 1980);[6] *United States v. Martin*, 574 F.2d 1359, 1360 (5th Cir. 1978).  And we have said that if it did exist, it would require a showing "that one sovereign was so

---

[6] All decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (en banc).

7

dominated, controlled, or manipulated by the actions of the other that it did not act of its own volition." *Baptista-Rodriguez*, 17 F.3d at 1361.

Assuming *arguendo* that such an exception exists, we're quite sure it doesn't apply in the instant case. Turner argues the federal authorities were really acting as a tool of the state of Alabama because (1) Agent Gonzales testified that Turner's state charges were what prompted him to question Turner; (2) Agent Gonzales "referred to himself and state agents collectively" in the suppression hearing; (3) state and federal law enforcement had been working together to investigate Turner and Martinez since April 2017; (4) state and federal agents interviewed Turner together on September 20, 2018; and (5) "it is likely that . . . [the] law enforcement officers made some promise (whether implied or express) regarding the state charges if Mr. Turner cooperated."[7]

Turner has failed to explain how any of this shows that the federal government was "dominated, controlled, or manipulated" by the state of Alabama such that "it did not act of its own volition" in investigating and prosecuting him. *Id.* at 1361. Instead, this shows only that state and federal law enforcement cooperated, as they often do, to investigate conduct that violated both state and

---

[7] Turner argues this final point "can be inferred by this Court," but we disagree. There's nothing in the record that suggests the officers made a deal to drop or reduce the state charges in exchange for Turner's cooperation with the federal investigation.

federal law.  Therefore, we affirm the District Court's denial of Turner's motion to suppress.

**AFFIRMED.**